# Central Railroad Co. of New Jersey *v.* Mauser, Appellant.

*Common carriers—Railroad companies—Interstate Commerce
Act—Freight rates—Departure from published rates—Suit to re-
cover legal rate.*

1. Where there has been a departure from established and
published rates for the transportation of freight by a railroad com-
pany, whether by mutual mistake or for other reasons, the legal
rate must be paid by the shipper. An agreement for a rate other
than that prescribed for the particular service by the Interstate
Commerce Act is absolutely void. The fact that the shipper will
suffer actual loss, in consequence of being quoted a lower rate than
the legal one, is not material in an action by the railroad company
to recover the legal rate, although it might be the basis of an ac-
tion to recover damages for negligent misquotation of the rate.

2. In an action by a railroad company to recover freight charges
it appeared that the defendant, who was a shipper of flour, had
inquired of a responsible officer of plaintiff railroad company as
to the rates for such shipment, and was by mistake given a rate
which was less than the legally prescribed rate; plaintiff acted
upon this representation for a period of two years; thereafter

the railroad company discovered that less than the legal rate had been charged and brought an action to recover for the difference between the legal rate and that the shipper had paid. *Held,* the railroad company was entitled to recover.

Argued May 5, 1913. Appeal, No. 37, Jan. T., 1913, by defendants, from judgment of C. P. Lehigh Co., Sept. T., 1911, No. 92, in favor of plaintiff in case of The Central Railroad Company of New Jersey v. Frank B. Mauser and Allen H. Cressman, trading as Mauser & Cressman. Before Brown, Potter, Elkin, Stewart and Moschzisker, JJ. Affirmed.

Assumpsit to recover freight charges for transportation of property. Before Trexler, P. J.

The facts appear in the opinion of the Supreme Court. The case was tried by the judge without a jury by agreement of the parties. The court entered judgment in favor of the plaintiff for $2,152.67. Defendants appealed.

*Errors assigned* were various findings of fact and law and the judgment of the court.

*Preston K. Erdman,* with him *Edward Harvey,* for appellants.

*Frank Jacobs,* with him *Charles E. Miller,* for appellee.

OPINION BY MR. JUSTICE STEWART, June 27, 1913:

In the disposition of civil cases involving violation of the provisions of the Federal Interstate Commerce Act, where the effort is to collect from a shipper the legal, prescribed rate for the service rendered, equitable principles play no part. Where there has been a departure from an established and published rate for the transportation of freight, it is never a question what the purpose back of it was, whether innocent or fraudulent,

or whether occasioned by mutual mistake, or by the mistake of one of the parties acted upon by the other in good faith.   Both parties are alike charged with full knowledge of the prescribed rates; and if either comes short in this it is his own fault through negligence, or what is worse, and neither may excuse himself by showing reliance upon representations as to prescribed rates other than those appearing in the printed and published schedule.   No agreement for a rate other than that prescribed for the particular service can have any binding force.   No matter how induced, the law will refuse to recognize in it any of the characteristics of a contract. In the estimation of the law such agreement is not a voidable contract which when once executed the law will not disturb what has been done thereunder, as where the agreement is contra bonos mores; but it is an absolute nullity, because, being prohibited by statute, it is impossible for parties to contract with reference to the particular subject.   Strictly speaking, there can be no such thing as a void contract; there may be an agreement to do something violative of positive law, but such agreement can never become a contract.   We define a contract to be an agreement upon sufficient consideration to do or not to do a particular thing; but it is here implied that the particular thing is to be a legal and competent matter.   It follows necessarily that when these defendants accepted the services of the plaintiff as carrier, the only contract under which the service was rendered was the implied one that they would pay for the service at the rate prescribed by law, seeing that that was the only rate by which the carrier was allowed to render the service.   Touching this matter we have the following plain deliverance by the interstate commerce commission in the case of L. B. Blinn Lumber Company v. Southern P. Co., 18 Interstate Com. Reports 430: "The theory of the common law permitted carriers to make private contracts for transportation, which contracts were evidenced by the bills of lading given to the

shippers. Under this practice, charges varied as between shippers, and the fullest freedom was exercised to "trade" in transportation. The abuses arising under such conditions led to the enactment of the act to regulate commerce. Thence, therefore, the rates to be charged for transportation were removed from the field of barter and became matters of legal regulation, the bill of lading became at once little more than a receipt for the goods to be transported, into which could be legally incorporated nothing obnoxious to the law. It was therefore placed beyond the power of the agent of a corporation carrier, or of any officer thereof, to bind the carrier to any rate other than that applicable, under the filed tariffs to the traffic accepted for transportation. This necessarily so, else the purpose of the law could be set side at will by any agent who might choose to favor or to injure a shipper. The shipper obtains transportation by right of law, and the rate charged is not the result of contract, but is fixed and determined under a required legal form." Again it is said in Poor v. Chicago B. & Q. R. R. Co., 12 Interstate Com. Reps. 418: "Under the force of the Interstate Commerce Act the published rate has taken on a fixed and rigid character that does not permit it to yield either to importunity or to mistake. Regardless of the rate quoted or inserted in a bill of lading, the published rate must be paid by the shipper and actually collected by the carrier. When once lawfully published, a rate, so long as it remains uncanceled, is as fixed and unalterable, either by the shipper or by the carrier, as if that particular rate had been established by a special act of Congress. While shippers rely largely on rates quoted by freight agents and billing clerks, the law charges them with knowledge of the lawful rates, and they will not be heard by the commission to claim the benefit of a lower than the legal rate, on the ground that some railroad clerk has made a mistake in quoting a lower rate for a particular shipment. Such a course would open a broad and ample

way for the payment of rebates and for other unlawful
practices. Thus, a contract specifying rates less than
those named in the schedule is wholly illegal and will
not be enforced at the instance of the shipper, although
he may not have intended to violate the act." Still more
directly to the point is Forsters Brothers Co. v. Duluth,
S. S. and A. R. Co., 14 Interstate Com. Reps. 232, where
it is held that the "carrier may recover the full rate as
filed and published regardless of any contract for a less
rate, even though such contract is based upon the error
or misquotation of the carrier's agent; and no repara-
tion will be awarded the shipper, else collusion would
be too easy between a favored shipper and the carrier "

The principle asserted in these cases, that is, that the
private agreement between the parties for a rate other
than that prescribed is not a contract, and cannot be re-
garded, is fully recognized in Texas and Pacific Railway
v. Abilene Cotton Oil Co., 204 U. S. 426, and in Kansas
City Southern Railway v. Albers Commission Co., 223
U. S. 573, and in other cases which might be cited.

The facts in the present case show a strong equity in
these defendants. There was no posted schedule of
tariffs at the railroad station from which their ship-
ments of flour were made; they applied to the proper
railroad official, not with a view to bargaining for a re-
duced rate, but to know the rate prescribed, and were
given a rate which proved to be less than that pre-
scribed; they acted upon the representation of this offi-
cer and continued their shipments for two years, suppos-
ing the rate to be the legal rate and which they regularly
paid. Now, more than two years after the service had
been rendered and payment therefor has been accepted,
they are asked to make up the difference on all these
shipments, a difference amounting to $2,152.60. Were
not other interests here involved than such as affect the
parties to the immediate controversy, it would be
neither just nor equitable to allow a recovery in the case,
and whatever loss has resulted, if any, should fall on the

party whose mistake occasioned it. But, as we have said, here equitable principles play no part; not in order that the carrier may be protected from the consequences of its negligence, but that the federal statute, which forbids that freight rates should be made the subject of contract between carrier and shipper, may find its full enforcement despite the mistakes of both or either. Simply to note the distinction we remark, that in the action of a shipper against carrier to recover damages suffered in consequence of a mistaken rate quoted, under the circumstances we have here—not in having been required to pay the prescribed rate, for that would not be regarded as damage suffered, but such loss as should have reasonably been anticipated as a consequence of following the mistaken direction negligently given—the equities of the shipper could in such case be asserted; but not so here, in view of the public interests involved and the exact and rigid requirements of the federal statute which have been violated.

In what we have said, the several assignments of error have been answered, and further discussion of the case is unnecessary. The judgment is affirmed.