Crane Railroad Co. *v.* Central Railroad Co. of New Jersey, Appellant.

*Railroads—Common carriers—Published rates—Affidavit of defense.*

1. A railroad which was originally a plant facility but which was subsequently chartered under the general railroad laws, possessed of the right of eminent domain, owned and operated by an inde-

pendant company, having track connection with other railroads and transporting freight for the public, is a common carrier and not a mere plant facility. It is the right of the public to use a road's facilities and to demand its service which is the real criterian determinative of its character, rather than the extent of its business.

2. In an action by a railroad company against a connecting carrier to recover balance of freight charges alleged to be due to the plaintiff under a regular published schedule of rates, an affidavit of defense is insufficient which sets up that the plaintiff company is a mere plant facility of an industrial corporation and as such bound by a contract between the defendant and the latter corporation fixing a rate less than the published rate and at an amount already paid to the plaintiff, where it appears by the statement and affidavit of defense that the plaintiff is a general railroad corporation, enjoying the power of eminent domain, engaged in interstate commerce, and bound to accept shipments from the public.

Argued Feb. 2, 1915.    Appeal, No. 354, Jan. T., 1914, by defendant, from judgment of C. P. Lehigh Co., Sept. T., 1913, No. 57, for plaintiff for want of a sufficient affidavit of defense in case of Crane Railroad Company v. Central Railroad Company of New Jersey.    Before BROWN, C. J., MESTREZAT, POTTER, ELKIN and FRAZER, JJ.    Affirmed.

Assumpsit for a balance for services rendered in and about the transportation of cars.

Rule for judgment for want of a sufficient affidavit of defense.    Before GROMAN, P. J.

The facts appear by the opinion of the Supreme Court.

The court made the rule absolute.    Defendant appealed.

*Error assigned* was in making absolute rule for judgment for want of sufficient affidavit of defense.

*Charles E. Miller,* with him *Frank Jacobs,* for appellant.

*Cyrus G. Derr*, with him *William Jay Turner* and *George W. Aubrey*, for appellee.

OPINION BY MR. JUSTICE FRAZER, March 1, 1915:

Appellee brought assumpsit against appellant to recover the sum of two thousand one hundred seventy-six dollars and forty-four cents ($2,176.44) with interest from September 1, 1909, being a balance claimed to be due for transporting over the railroad of appellee cars received from appellant's line. A judgment was entered in the court below against appellant for want of a sufficient affidavit of defense, and this appeal followed. The facts are as follows: For a long time prior to 1905 the Crane Iron Works, a corporation of this Commonwealth, organized for and engaged in the manufacture of iron at the Borough of Catasauqua, owned and used in connection with its iron works a private railroad which connected its various buildings and furnaces with each other, and also with the tracks of appellant company and other railroads. The construction of these tracks was commenced about forty years ago, and they have been extended from time to time as the business of the iron works increased, and new industries were established in that vicinity.

Pursuant to the terms of an agreement between appellant and the Crane Iron Works, which was entered into before the incorporation of appellee, the former paid to the latter the sum of six cents per ton on all cars hauled by the iron company to and from its works and other industrial establishments located along the line of the iron company's tracks to the tracks of appellant. Appellee was incorporated July 28, 1905, under the general railroad laws of this State, and shortly thereafter, took over all the rolling stock and tracks of the Crane Iron Works, and has since in operating the same transported cars to and from the several industrial establishments and appellant's main line.

Following its incorporation appellee filed with the In-

terstate Commerce Commission and posted and kept open for public inspection, schedules of its rates and charges for transportation, which specified a charge of two dollars per car for all cars transported over its lines from and to lines with which it connected. Appellant, with knowledge of the filing of appellee's schedule, also filed with the commission its schedules in which the rates fixed by appellee were recognized as applying to all shipments over appellant's line, except coal and coke. A charge of two dollars per car was collected by appellant from shippers, but that amount was not paid over to appellee in full on cars moved prior to January 31, 1911— the payments made by appellant previous to that time being at the rate of six cents per ton, and this action is to recover the difference between the two rates. The cars delivered to and received from appellant's trunk line were for and from points within and without the State of Pennsylvania. The affidavit of defense sets up the ownership of appellant's railroad, prior to 1906, by the Crane Iron Works, an industrial company; denies that appellee is a common carrier engaged in interstate commerce, and claims that appellee is merely the agent of the Crane Iron Works, and as such, is required by its agreement to accept six cents per ton for freight transported over its line. The first question raised for determination is whether appellee is a common carrier or merely a plant facility. Its charter was granted under the general railroad laws of this Commonwealth; it is controlled and operated by a management separate from that of the iron works, and possesses the right of eminent domain; its tracks connect with the tracks of other railroads, which together with the connecting roads form lines reaching all parts of the country, and in the exercise of its chartered rights transports for hire, freight from not only the plant of the Crane Iron Works, but from the several other manufacturing establishments adjacent to its line. In these respects appellee is not different from appellant, and the court below was not in

error in holding it to be a common carrier under the laws of this Commonwealth, and not a mere plant facility. The conclusion reached by the learned court below is not only in line with the decisions of our own State, but is supported by those of the Federal Supreme Court in what are known as the Tap Line Cases, 234 U. S. 1, which are similar in many respects to the case at bar. There the roads, at first a plant facility, were extended as the company's business required, and as such extensions were made, just as in this case, the freight of others was transported. In these cases Mr. Justice DAY, speaking for the court says: "It is insisted that these roads are not carriers because the most of their traffic is in their own logs and lumber, and that only a small part of the traffic carried is the property of others. But this conclusion loses sight of the principle that the extent to which a railroad is in fact used, does not determine the fact whether it is or is not a common carrier. It is the right of the public to use the road's facilities and to demand service of it rather than the extent of its business which is the real criterion determinative of its character.".....
"Furthermore, these roads are common carriers when tried by the test of organization for that purpose under competent legislation of the State. They are so treated by the public authorities of the State, who insist in this case that they are such and submit in oral discussion and printed briefs, cogent arguments to justify that conclusion. They are engaged in carrying for hire the goods of those who see fit to employ them. They are authorized to exercise the right of eminent domain by the State of their incorporation. They were treated and dealt with as common carriers by connecting systems of other carriers, a circumstance to be noticed in determining their true character." Although the affidavit of defense sets out that appellee "is not a common carrier by railroad in interstate commerce," it does not deny that much of the freight transported by it is destined for and is received from points without the State of Pennsylvania. We

must, therefore, assume that appellee is engaged in interstate commerce. In United States v. Standard Oil Company of Indiana, 155 Fed. Repr. 305, it is said: "If a carrier enters the field for traffic destined to points beyond its line, and a shipper turns his property so destined over to it, such traffic is as clearly subject to the requirements of the interstate commerce law as would be the case if the carrier owned and operated the line through to destination." Appellee being a common carrier and engaged in interstate commerce, the law required it to file with the commission a schedule of its rates, and in A. J. Poor Grain Company v. Chicago, Burlington & Quincy Ry. Co., 12 I. C. C. 418, it is held: "The published rate governing transportation between two given points, so long as it remains uncancelled, is as fixed and unalterable either by the shipper or by the carrier as if that particular rate had been established by a special act of the congress. When regularly published, it is no longer the rate imposed by the carrier, but the rate imposed by the law." And in our own State in Central R. R. of N. J. v. Mauser, 241 Pa. 603, in discussing interstate commerce schedule rates, Mr. Justice STEWART says: "Both parties are alike charged with full knowledge of the prescribed rates; and if either comes short in this it is his own fault through negligence, or what is worse, and neither may excuse himself by showing reliance upon representations as to prescribed rates other than those appearing in the printed and published schedule. No agreement for a rate other than that prescribed for the particular service can have any binding force. No matter how induced, the law will refuse to recognize in it any of the characteristics of a contract." Under these cases it necessarily follows that the rates fixed by appellee and filed with the Interstate Commerce Commission are absolutely binding upon all parties, including other carriers over whose lines the traffic passes as well as appellee.

In view of what we have said above, it follows that the learned court below committed no error in reaching the

conclusion that appellee is a common carrier in interstate commerce; that its published schedule of rates is binding upon appellants as well as all individual shippers, and that the affidavit of defense is insufficient to prevent judgment.

Judgment affirmed.