(98 South. 197)

**REPUBLIC IRON & STEEL CO. v. DAVIS, Director General, etc. (6 Div. 920.)**

(Supreme Court of Alabama. Nov. 29, 1923.)

**1. Carriers ☞189—Shipment of coal to point given lower rates, and from there to other points held not entitled to lower rate.**

A shipment of coal by a furnace company from its mines to T., where its furnace was located, from which point it was reconsigned to its ore mines at the local rate, was not a shipment of furnace material consigned to T. "to and for the use of pig iron furnace companies" located at T., within the meaning of a tariff providing for a low rate of 50 cents per ton for shipments of furnace coal to T., and the railroad was therefore entitled to recover the difference between the low rate paid and the general tariff of 70 cents a ton.

**2. Carriers ☞196—Whether place of consignment was "at point of destination" within tariff held question of fact.**

Whether a shipment of coal a short distance from the railroad would be "at the point of destination" within the meaning of a tariff giving a lower rate to furnace coal shipped to that point *held* to be a question of fact.

**3. Carriers ☞35—Exaction of inapplicable rate held not binding on railroad.**

In an action for balance due on freight shipments of coal, evidence of the practice under similar tariffs was properly excluded because the construction of the tariff is a matter of law, and an improper usage could not justify an incorrect construction; the principle of estoppel not being applicable to railroad tariffs even where carrier quotes wrong rate.

Appeal from Circuit Court, Jefferson County; J. B. Aird, Judge.

Action by James C. Davis, as Director General of Railroads and Agent under the Transportation Act, against the Republic Iron & Steel Company. From a judgment for plaintiff, defendant appeals. Affirmed.

Portions of the tariff introduced in evidence by defendant are as follows:

"Southern Railway System. Freight Tariff of Southern Railway Company, in connection with Alabama Great Southern Railroad FX5–1, Louisville & Nashville Railroad FX3–994, Northern Alabama Railway FX4–1. Joint and Local Rates on Furnace Material, C. L. Applicable only on consignments to and for the use of pig iron furnace companies and steel mills, also to cast iron pipe companies making large water and gas mains, located at points of destination named herein. Indicated herein, in cents per ton 2,000 pounds. Governed, except as otherwise provided herein, by Alabama Classification (J. E. Kirk's I. C. C. No. 23), supplements thereto, and reissues thereof. Alabama Furnace Material Tariff No. 5 (cancels Alabama Furnace Material Tariff No. 4). From Southern Railway and Northern Alabama Railway Mines and Ovens in Alabama to Alabama Furnace Points Named Herein."

"Freight Tariff of Southern Railway, in connection with carriers named below under authority of appointment notice No. 3 filed with the Interstate Commerce Commission by the Director General of Railroads (cancels list of participating carriers shown on title page of tariff reissue, effective March 23, 1919, in Supplement No. 3). Alabama Great Southern R. R., Louisville & Nashville R. R. (participates only as an intermediate and/or delivering carrier), Northern Alabama Ry. Joint and Local Rates on Furnace Material, Carload."

"Note.—Applicable only on consignments to and for the use of pig iron furnace companies."

Percy, Benners & Burr and Salem Ford, all of Birmingham, for appellant.

The proper construction of the tariff is that the lower rate applied to the shipments in question, and that it permitted the use of the coal in any way appellant saw fit, so long as appellant was a pig iron furnace company and used the coal entirely in its own business. Kenner Truck Farmers' Ass'n v. Ill. Cent. R. R., 32 Interst. Com. Com'n R. 1; Standard Oil Co. v. Ill. Cent. R. R., 23 Interst. Com. Com'n R. 369; Humboldt S. S. Co. v. White Pass & Yukon Route, 25 Interst. Com. Com'n R. 136; L. & N. v. Maxwell, 237 U. S. 94, 35 Sup. Ct. 494, 59 L. Ed. 853, L. R. A. 1915E, 665; Van Patton v. C., M. & St. P., 81 Fed. 545; Lakewood Eng. Co. v. N. Y. C., 259 Fed. 61, 170 C. C. A. 129. Railroad tariffs being usually technical, appellant should have been allowed to show what construction expert rate men had for years placed on the tariff.

Stokely, Scrivner, Dominick & Smith, of Birmingham, for appellee.

Evidence of what appellant had done under similar tariff was inadmissible; the principle of estoppel does not apply in railroad tariffs, even where the carrier quotes the wrong rate. P., C., C. & St. L. v. Fink, 250 U. S. 577, 40 Sup. Ct. 27, 63 L. Ed. 1151; N. Y. C. v. York & Whitney Co., 256 U. S. 406, 41 Sup. Ct. 509, 65 L. Ed. 1016. The tariff in question covers only furnace material, and coal used at ore mines ten miles away, on another system, is not furnace material.

PER CURIAM. [1] The Director General of Railroads, operating the Southern Railway, as plaintiff, sued Republic Iron & Steel Company for an alleged balance due on freight shipments of coal from Littleton, Ala., to Thomas, Ala., and from Republic, Ala., to Thomas, Ala., in the year 1919. The case was tried without a jury, and there

☞For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

was judgment by the court for the plaintiff in the sum of $2,100. The defendant has appealed. The main question submitted is on the construction and application of a freight tariff known as Alabama furnace material tariff No. 5. It appears by the record that in 1919 the Director General of Railroads was operating both the Southern and Louisville & Nashville Railroad systems in Alabama. He was engaged in the business of carrying coal from Littleton, Risco, Palos, and Republic, Ala., to Thomas, Ala., on the Southern lines, and to Raimund, Gothite, Reno, and Spaulding on the Louisville & Nashville lines. Coal originating at Risco, Palos, Republic, and Littleton moved direct to Thomas, Ala., over the Southern lines, and to Raimund, Gothite, Reno, and Spaulding via Thomas; that is, coal destined for the latter places moved to Thomas, and was there rebilled over the Louisville & Nashville Railroad. There were in force and effect two rates on coal from Risco, Palos, and Republic to Thomas. The Alabama furnace material rate provided in Alabama furnace material tariff No. 5 was 50 cents per ton. The general rate for all other movements of coal was 70 cents per ton, as provided in coal tariff No. 13, I. C. C. A–8150. When coal was moved from Risco and the above points of origin to Thomas and then to Raimund, Gothite, Risco, and Spaulding on the Louisville & Nashville, there was, of course, an additional charge for the transportation from Thomas to these last-named points. The Republic Iron & Steel Company was a furnace company with coal mines at Risco, Littleton, and Republic, a furnace at Thomas, and ore mines at Raimund, Gothite, Reno, and Spaulding. That company made the shipments of coal involved in this suit from Risco, Littleton, and Republic to Thomas at the rate of 50 cents per ton, and then reconsigned these cars from Thomas to Raimund, Gothite, Reno, and Spaulding on the local rate. The Director General contended that in this state of the facts the 50-cent rate did not apply, but that the general rate of 70 cents a ton should govern, and brought suit for the difference. On the trial it was admitted that; if the 70-cent rate applied, the Republic Company was due the Director General of Railroads the amount claimed.

The defendant introduced in evidence certain material portions of the said furnace material tariff No. 5. The parties agreed that in the said tariff so introduced Littleton and Republic were listed as points of origin and Thomas was given as a point of destination, with a rate of 50 cents per ton; Spaulding, Raimund, and the other points on the Louisville & Nashville to which the coal in question was reconsigned were not shown on this tariff as points of destination.

Excepting the point of evidence which will be hereinafter referred to, the only issue between plaintiff and defendant is as to the construction of the two tariffs and as to which tariff should apply.

Did the Alabama furnace material tariff No. 5 apply, or did coal tariff No. 13, I. C. C. A–8150, in the general movement of coal, apply to the shipment here in question, it being admitted that no part of said shipments was used at Thomas?

It will be observed in the exhibited tariff form for the 50-cent rate that it carries a heading "Joint and Local Rates on Furnace Material," and a subhead "Alabama Furnace Material Tariff No. 5 (Cancels Alabama Furnace Material Tariff No. 4)," and another subhead "Joint and Local Rate on Furnace Material, Carload." From the same exhibit the following language is also quoted:

"Applicable only on consignments to and for the use of pig iron furnace companies * * * located at points of destination named herein," and "from Southern Railway and Northern Alabama Railway mines and ovens in Alabama to Alabama furnace points named herein," and "Note.—Applicable only on consignments to and for the use of pig iron furnace companies."

There is a serious contention and argument between the parties as to whether the shipments in question were furnace material, since they were not used in the furnaces at Thomas, but were reconsigned to points on the Louisville & Nashville Railroad averaging a distance of ten miles away, and there used to generate power in iron ore mining. The railroad contends that the coal referred to in the tariff as furnace material must be used in the operation of the furnace itself, or in its reduced form of coke as an element in pig iron production, and, if it is not so used, that it does not come within the proper definition of furnace material under the language of the tariff. The Republic Company contends that, since the coal in question was retransported from Thomas to the more or less distant mines, and there used for the purpose of mining iron ore, it is a furnace material within the sense and meaning of the tariff, because the iron ore extracted from the ground goes later into the furnace at Thomas to produce the manufactured product. The question of mere definition of the words "furnace material" might be properly arguable on these facts in a different place and on a different issue. But, because of the other facts in the case, and the other language in the tariff it is plain to our minds that the shipments in question would not come under the 50-cent tariff. It is plain that the ratemakers had in mind and expressed their intention with reasonable clearness in the language used that only shipments of furnace material for use in the furnaces at Thomas should take the lower rate. Not only is it provided in the lower tariff that it applies only to consignments to the point of destination (Thomas), but it is also provided

that these consignments must be to and for the use of furnace companies located at that point. This restriction is given emphasis by the footnote at the end of the tariff. It seems entirely plain that any shipment intended for use at another point than the point of destination named in the tariff would not come within its terms. There is another and general tariff applying to shipments other than the limited ones taking the 50-cent rate, and under the facts presented in the record the plaintiff was entitled to recover.

[2] There is no merit in the suggestion of appellant that under this ruling it could not ship on the reduced rate material to be used a few hundred yards from the railroad, because such a place would not be "at point of destination." The question of location is one of fact, and the proper definition of the preposition "at" as used in the tariff could be determined on any different state of facts that might arise. The general coal tariff No. 13, I. C. C. A–8150, applies to the shipments here in question, and not the Alabama furnace material tariff No. 5.

[3] Defendant asked witness Bryan this question:

"How long has coal been shipped from these mines of the Republic Company at Risco, Palos, Littleton, and Republic under tariffs similar to the one just referred to?"

The plaintiff's objection to the question was sustained. This ruling of the court is now assigned as error. Appellant has cited no authority to justify its contention that the proposed evidence was admissible, and we have found none. The construction of the tariff is a matter of law, and an improper usage could not justify an incorrect construction. The principle of estoppel does not apply in railroad tariffs, even where the carrier quotes the wrong rate. L. & N. R. R. Co. v. Maxwell, 237 U. S. 54, 35 Sup. Ct. 494, 59 L. Ed. 853; Central R. R. Co. of New Jersey v. Mauser, 241 Pa. 603, 88 Atl. 791, 49 L. R. A. (N. S.) 92, and note.

If, as is true, the application and exaction of an inapplicable rate to a given shipment is not binding on the railroad, so a practice otherwise under "similar tariffs" could constitute no justification. The objection to the question was properly sustained.

The judgment of the circuit court is affirmed.

Affirmed.

ANDERSON, C. J., and SOMERVILLE, THOMAS, and BOULDIN, JJ., concur.

NOTE.—The foregoing opinion was prepared by Mr. Justice McCLELLAN before his resignation, and is adopted by the court.