(138 So. 417)

## ALABAMA POWER CO. v. PATTERSON.
### I Div. 4.

Court of Appeals of Alabama.
May 26, 1931.

Rehearing Denied June 30, 1931.
Reversed on Mandate Dec. 15, 1931.

Inge, Stallworth & Inge, of Mobile, for appellant.

560

Vincent F. Kilborn, of Mobile, for appellee.

RICE, J.

This appeal is brought by the defendant in the court below, from a judgment against it, rendered in favor of one A. S. Tew, plaintiff, in a suit filed by the said Tew, seeking to recover an amount claimed by him to be due as for an overcharge collected from him on his account for electricity consumed for lighting purposes.

Subsequent to the time of the taking of the appeal, but prior to the date of the submission of the case in this court, Tew died.

Upon the suggestion here of that fact, by the consent of the parties in interest, and appropriate order, the appeal was revived, with James S. Patterson as administrator of the estate of A. S. Tew taking the place, as appellee, made vacant by the death of the said A. S. Tew.

Hereinafter, when we use the word "appellee," it will be understood that we refer to A. S. Tew, the deceased, the full burden of all of whose actions is, of 'course, carried on this appeal by the said James S. Patterson, as administrator, etc.

The case was tried in the court below on count one of the complaint, a count claiming for money had and received, and the general issue; the trial resulting in a judgment for the plaintiff in the sum of $6.01.

### Statement of Facts.

On December 31, 1906, the city of Mobile and the Mobile Electric Company, a public utility corporation lawfully engaged in the business of making, furnishing, and selling electric current to the public in the city of Mobile, and the predecessor of the Alabama Power Company, entered into a contract for lighting the streets of the city of Mobile, and which, in addition contained a schedule of rates to be charged private consumers (such as appellee) of electricity in said city. On June 8, 1910, this contract was modified by the parties thereto.

On December 29, 1920, and while the contract mentioned in the next preceding para-

graph was still in force (Mobile Electric Co. v. City of Mobile, 201 Ala. 607, 79 So. 39, L. R. A. 1918F, 667), the said Mobile Electric Company filed with the Alabama Public Service Commission a revised schedule of rates for the city of Mobile, embracing a general lighting rate known and called "Schedule A" asking that the rates therein contained be approved.

This petition was duly heard by the Alabama Public Service Commission, and on March 11, 1921, it rendered an opinion and order approving the rates in the said "Schedule A," which, therefore, became effective in the city of Mobile on March 11, 1921; the said Alabama Public Service Commission having possessed full power and authority to entertain said petition and make said order. Alabama Water Co. v. City of Attalla, 211 Ala. 301, 100 So. 490.

At this time the city of Mobile was supplied with electric current by the Mobile Electric Company, only, which manufactured its electric current in a steam plant located in Mobile county; and, under "Schedule A," the Mobile Electric Company and its successors, the Gulf Electric Company and the Alabama Power Company, billed its customers up to, through, and including, the year 1928.

On March 7, 1923, the Alabama Power Company was a public utility corporation organized and existing under the laws of Alabama and with authority engaged in Alabama in the manufacture and sale of electric current generated by both steam and water power, said system commonly known as the hydro system, but this company was not then engaged in business in the city or county of Mobile, nor had it any transmission or distribution lines by which it could bring electric current into Mobile county or over which it could distribute its current, as at that time the city and county of Mobile were served as hereinbefore stated by the Mobile Electric Company, a corporation not controlled or owned by the Alabama Power Company or interested in any way in the Alabama Power Company or the Alabama Power Company in it; the two being separate, distinct, and independent corporations and not serving territory encroached upon by the other.

At that time, viz., on March 7, 1923, the Alabama Power Company having filed with the Alabama Public Service Commission its petition, seeking approval by that body of what is designated as "Service Classification A-3," effective for service rendered "between March and April 1923," and *thereafter* (italics ours), for all service in the state of Alabama, the Alabama Public Service Commission entered an order granting the said petition, and approving the rates contained in the said "Service Classification A-3." This rate is entitled as follows: "Service Classification A-3—Residential and Commercial Lighting (For Cities Having 7,000 or more Lighting Customers)—Hydro System—110 to 220 volts—Availability—Available to any consumer for general lighting purposes, served by the hydro system over the retail distribution lines of the company in urban centers having 7000 or more lighting customers."

As above stated, in 1923 and at the time "Service Classification A-3" was approved by the Alabama Public Service Commission, the city of Mobile was being served by the Mobile Electric Company, and that company was not selling hydro-generated current, but was operating a steam plant for the generation of electricity in the city of Mobile.

The Mobile Electric Company continued to serve the city of Mobile with this steam-operated plant until after it was merged with the concern known as the Gulf Electric Company, the merger being effected in 1925, and approved by the Alabama Public Service Commission. Immediately prior to this merger, the record here shows that the Gulf Electric Company petitioned the Alabama Public Service Commission, stating that it had the privilege of acquiring, and proposed to acquire, the electrical properties of the Mobile Electric Company; that Mobile Electric Company was obtaining its supply from a steam-generated plant, not owned but leased by it; and that the Gulf Electric Company had a contract with Alabama Power Company for a supply of hydro current, and was then negotiating with the Alabama Power Company to connect with its hydro-electric system, so that hydro-electric energy could be conducted to and served in the city of Mobile. The Public Service Commission, acting on this petition, authorized the Gulf Electric Company to connect with the hydro-electric system of the Alabama Power Company, and to construct a transmission line from a dam on the Coosa river to Mobile, thereby enabling it to procure hydro-electric energy in Mobile under its contract with the Alabama Power Company. The order of the Alabama Public Service Commission on this petition reads, among other things: "That Petitioner (Gulf Electric Company) is hereby granted the privilege of transmitting electric energy from its generating plants within the State of Alabama over and through its hydro electric system to the City of Mobile, Alabama, by means of the transmission line herein considered, and to serve from such transmission line customers who contract for the same under rates, regulations and rules fixed and prescribed by this Commission."

Gulf Electric Company continued to serve the inhabitants of the city of Mobile until October of 1927, at which time an agreement of consolidation was entered into between the

Gulf Electric Company, Houston Power Company, and Alabama Power Company, forming, as is recited in the agreement of consolidation, a new corporation, known as the Alabama Power Company. This consolidation was approved by the Alabama Public Service Commission.

It is agreed that during the year 1928, the Alabama Power Company, the corporation formed by the consolidation aforesaid, was furnishing electric light and power to the inhabitants of the city of Mobile, and that although during all of that year it (the Alabama Power Company) had in the city of Mobile ."7000 or more lighting customers served by the hydro system over the retail distribution lines of the company," yet it collected from appellee, and the inhabitants of the city of Mobile, the Mobile Electric Company rate, approved, as before stated, in 1921.

It is the contention of the appellee, in short, that the agreement of consolidation between the Gulf Electric Company, Houston Power Company, and Alabama Power Company, had the effect (as recited in the agreement of consolidation) of creating a new corporation and conferring upon that corporation all of the rights and powers, and at the same time, the duties, of the three constituent elements, Gulf Electric Company, Houston Power Company, and Alabama Power Company; that this consolidation agreement, together with the approval of the Alabama Public Service Commission, had the effect of making the rate schedules of the old Alabama Power Company those of the new, and made it the duty of the Alabama Power Company operating in Mobile in 1928 to apply "Service Classification A-3," and give appellee and the inhabitants of the city the benefit of the rates therein contained, which were less than those contained in "Schedule A," the Mobile Electric Company rates, approved in 1921, under which appellee was billed, and the amount of which he paid, during the said year of 1928.

Appellant's contention, as we gather, is that it had the right to charge appellee under the said "Schedule A," which it did; this for the reason that as, first, the Mobile Electric Company, and then, after that company was merged into the Gulf Electric Company, the Gulf Electric Company, was authorized to charge for electricity in Mobile according to the rates in "Schedule A," the appellant, after the consolidation agreement between the Gulf Electric Company, Houston Power Company, and Alabama Power Company, was authorized, if not under the duty, to charge for current in the former Gulf Electric Company territory, which included Mobile, according to the rates that had prevailed with the Gulf Electric Company. Or, appellant says, even if it improperly applied the Mobile Electric Company rate (Schedule A) instead of "Service Classification A-3," during the year 1928, appellee cannot recover in this suit because the payment of the amount claimed in the suit was voluntarily made to appellant.

As the case is presented here, it would seem that if we decide that the rates contained in "Service Classification A-3," above, are the rates which appellant should have charged appellee, and the other inhabitants of Mobile, during the year 1928, the judgment of the lower court is due to be affirmed; unless we should decide that the amount sued for was *voluntarily* paid to appellant, under a mistaken conception of the law, rather than of the facts, in such sort that it is unrecoverable.

## Opinion.

It is not contended here, as indeed it could not successfully be, that the Alabama Public Service Commission has not exclusive jurisdiction over rates, such as those involved in this suit. Sections 9631, 9632, 9633, and 9741 of the Code of Alabama of 1923. But it is our province to determine which rate is applicable—to determine whether the Alabama Power Company erroneously applied the Mobile Electric Company rate (Schedule A) instead of "Service Classification A-3," which provided a lower rate to the consumer.

■ The construction of rate schedules, and determination of which schedule is effective to a given state of facts, is a purely judicial function, one subject to exercise by the courts alone, and the Alabama Public Service Commission has no power nor authority to determine that issue. Its function is to fix rates for the future, to pass upon what is and what is not a reasonable rate, not to decide which of two tariffs is in effect at a given time and applicable to a given state of facts.

"The construction of the tariff is a matter of law." Republic Iron & Steel Co. v. Davis, 210 Ala. 361, 98 So. 197, 199.

■ There can be but one lawful rate in force at a given time. T. R. Miller Mill Co. v. Louisville & N. R. Co., 207 Ala. 253, 92 So. 797.

■■ It is true, as suggested by appellant, that rates applicable to one corporation are likewise applicable to a new corporation created by the consolidation of the former with others. And that in this case the rates formerly approved by the Alabama Public Service Commission for any of the constituent corporations combining to form the *new* Alabama Power Company, attached to, or became incumbent upon, the said *new* corporation. But, granting that the rates in Schedule A formerly approved for the Mobile Electric Company, and the rates in Service Classification A-3, formerly approved for the Alabama Power Company, became, each set of them, rates which the *new* Alabama Power Company were due to apply in the city of Mobile during the year 1928, it was clearly, we think, the duty of this *new* Alabama Pow-

er Company to apply the lowest set of rates, to wit, those in Service Classification A-3. W. L. Shepherd Lumber Co. v. Atlantic Coast Line R. Co., 216 Ala. 89, 112 So. 323, 325. Pertinently, here, we think, it is said in the opinion in this W. L. Shepherd Lumber Co. Case: "We have only the determination of what was the lawful rate under the instant facts. When there is no specific routing by the shipper, the general rule is that it is the duty of the carrier to ship or carry (1) by the cheapest and most available route, (2) and to charge the lowest rate that has application to such shipment."

We are not persuaded by appellant's argument that the rates in Service Classification A-3 were never meant to apply in Mobile because, at the time said schedule of rates were approved, the said city of Mobile was not an "urban center having 7000 or more lighting customers—served by the hydro system over the retail distribution lines of the company."

■ The statutes contemplate the making of rates on the basis of classification, and require that the utility *conform* its schedule of rates to such classification. Code 1923, § 9791.

When Service Classification A-3 was approved, it was on the basis of classification. And when the city of Mobile, or any other "urban center," for that matter, came within the terms of the classification, "urban centers having 7000 or more lighting customers— served by the hydro system over the retail distribution lines of the company," the rates contained in Service Classification A-3, ipso facto, applied. And it was the duty of appellant to conform thereto. Code 1923, § 9791, supra.

It being agreed that during the time involved in this suit appellee was a "consumer for general lighting purposes, served by the hydro system over the retail distribution lines of the company, in Mobile, an urban center having 7000 or more lighting customers," we hold that it was unlawful to collect from him by any other schedule of rates than that contained in Service Classification A-3, above.

■■ It being shown that the amount collected from appellee during the time mentioned was *more* than the lawful rate, we hold that his payment of same, without protest, does not, and cannot, estop him to recover the difference between what he actually paid, and the amount that could have been lawfully collected from him. To hold otherwise would, it seems to us, defeat the very purpose of the lawmakers, in providing for a system of uniform rates, and in their enactment that any rate different from those fixed in approved schedules should be considered as unlawful. The courts will permit no subterfuge or even agreement of the parties to avoid an adherence to the lawful rates. See Code 1923, § 9779. As said by our Supreme Court in the opinion in the case of Birmingham Water Works Co. v. Brown, 191 Ala. 457, 67 So. 613, 616, L. R. A. 1915D, 1086, "It is familiar doctrine that an agreement void as against public policy cannot be rendered valid by invoking the doctrine of estoppel."

■■ The action here, one for "money had and received," is appropriate "whenever the defendant has money in his possession which belongs of right to the plaintiff. * * * This right in the plaintiff to the money which bestows on him the right to maintain the action for it, must arise in some form, where the law implies a promise on the part of defendant that he will pay it to the plaintiff, and the only privity between the parties that needs be shown, arises from this promise implied by law,—that the defendant, having money in his hands that belongs, ex aequo et bono, to the plaintiff, will pay it over to him." Hudson v. Scott et al., 125 Ala. 172, 28 So. 91, 92; Farmers' & Merchants' Bank v. Talley, ante, p. 163, 132 So. 871; Farmers' Bank & Trust Co. v. Shut & Keihn, 192 Ala. 53, 68 So. 363. That condition exists in this case.

After giving thoughtful consideration to the contentions made for appellant, in the light of the law as we understand it, we have arrived at the conclusion that judgment was by the learned trial court properly rendered in favor of appellee. And the same is here affirmed.

Affirmed.

PER CURIAM.

Reversed and rendered on authority of Alabama Power Co. v. Patterson (Ala.) 138 So. 421.