MAIN, Justice.
Alabama Power Company (“Alabama Power”), the defendant in an action filed by Capitol Container, Inc. (“Capitol”), has filed a petition for a writ of mandamus, asking this Court to direct the trial court to dismiss Capitol’s claims against Alabama Power for lack of subject-matter jurisdiction. Alabama Power argues that the Alabama Public Service Commission (“the APSC”) has exclusive jurisdiction over those claims and that Capitol failed to exhaust its administrative remedies before filing the action. We grant the petition and issue the writ.

Factual Background and Procedural History

Capitol’s principal place of business is in Montgomery, and Capitol obtains its electrical power from Alabama Power. On January 7, 2010, Capitol filed a complaint in the Montgomery Circuit Court alleging that Alabama Power was refusing to refund or otherwise credit or to reimburse Capitol for overpayments Capitol had made to Alabama Power as a result of Capitol’s being on an incorrect power-rate plan.
In its complaint, Capitol alleged that it had been placed under a rate plan known as “Light and Power Time-of-Use Small” (“LPTS”) by Alabama Power. Capitol asserted that on February 5, 2009, Auditec, a utility-auditing firm, contacted Capitol and offered to evaluate Capitol’s billing records for electrical power to ascertain whether Capitol was under the appropriate rate plan for its electrical needs. Auditec determined that Capitol should be under a rate plan known as “Restricted Light & Power Service — Manufacturing” (“LPLM”). Capitol contacted Alabama Power, and, after discussion, Alabama Power changed Capitol from the LPTS rate plan to the LPLM rate plan. Capitol alleged that its monthly electrical-utility bills were reduced by approximately $3,000 and that it paid Auditec a fee for discovering that it had been being billed under an incorrect rate plan.
Capitol asserted, among other claims, negligence, wantonness, suppression, and unjust enrichment. Essentially, Capitol averred that Alabama Power was under a duty to advise it of the rate plan or classification that would be appropriate for it and had breached that duty, resulting in Capitol’s being charged a higher rate for electrical power; that Alabama Power had been unjustly enriched by the overpayment; and that Alabama Power refused to repay or to compensate Capitol for the overpayments. In three of the five counts of the complaint, Capitol alleged that Alabama Power’s actions were part of a pattern and practice of conduct as related to its commercial customers. Count one alleged in part: “Defendant has a pattern and practice of applying the wrong rate plan or classification to commercial customers and thus has overcharged and continues to overcharge numerous commercial customers.” Count two alleged in part: “Defendant has a pattern and practice of applying the wrong rate plan or classification to commercial customers and thus has in its possession money which belongs to numerous commercial customers.” Count three alleged in part: “Defendant has a pattern and practice of failing to disclose to commercial customers that Defendant is applying the wrong rate plan or classification.”
*577 On January 25, 2010, Alabama Power moved to dismiss Capitol’s action under Rule 12(b)(1), Ala.R.Civ.P., arguing that the trial court lacked jurisdiction over Capitol’s claims. Specifically, Alabama Power argued that the APSC has exclusive jurisdiction over the matters that are the subject of Capitol’s complaint and that Capitol had failed to exhaust its administrative remedies through the APSC before filing the complaint. With its motion and supporting brief, Alabama Power attached the affidavit of John A. Garner, an administrative law judge with the APSC. In his affidavit, Garner stated that [the APSC has general supervision of public utilities pursuant to § 87-1-32, Ala.Code 1975, and exclusive jurisdiction pursuant to § 37-1-31, Ala.Code 1975, and] that the APSC regulates Alabama Power pursuant to § 37-1-30 and § 37-4-1(7), Ala.Code 1975. Garner explained that, pursuant to assorted statutes and to rules established by the APSC, utilities must file their rates and service regulations with the APSC and must obtain prior approval of the APSC to change any of those rates or service regulations. Garner also stated:
“In addition to the General Rules of the APSC and the Alabama Power Company’s service regulations, the complaint procedures outlined in the Alabama Code and the Rules of Practice of the Alabama Public Service Commission are applicable to any complaint made to the APSC with respect to retail electric services, rates, and any related matter, and also to ‘any rates, service regulation, classification, practice or service in effect or proposed to be made effective’ with respect to Alabama Power Company’s provision of retail electric services in the State of Alabama. Alabama Code, § 37-1-83. This includes Alabama Power Company’s contracts with and service to its customers; the information its personnel discloses to or withholds from its customers or prospective customers in connection with Alabama Power Company’s retail electric service; Alabama Power Company’s rates; and all of its dealings with those persons or entities who are consumers or prospective consumers of electric services in Alabama.”
Filially, Garner stated that his review of the APSC’s records indicated that Capitol had not filed a complaint with the APSC related to Alabama Power. Alabama Power also attached to its motion to dismiss copies of the General Rules of the APSC (notably Rule 11, “Rate Schedules, Rules, and Regulations,” and Rule 15, “Overbill-ing and Underbilling”); and the Special Rules of the APSC (notably Rule E-15, “Billing Inaccuracies”).
On March 2, 2010, Alabama Power submitted supplemental authorities in support of its motion to dismiss. Alabama Power attached two orders from the APSC in other matters, which Alabama Power contended were illustrative of the APSC’s exclusive jurisdiction over rates and service regulations under § 37-1-31 and § 37-1-83.
On March 8, 2010, the trial court held a hearing on Alabama Power’s motion to dismiss. No testimony was presented, and the trial court heard argument from the parties. At the hearing, Alabama Power argued that Capitol became a commercial customer of Alabama Power in 1997 and that it was undisputed that the rate Capitol was assigned at that time was the best rate for Capitol at the time. Alabama Power asserted that, “[i]n about 2003, [Capitol] added a shift and did something different in the way it did business.” Alabama Power stated that Capitol subsequently discovered through an independent rate consultant that because of those changes it qualified for a different rate plan, one that would lower its cost of elec *578 tricity. According to Alabama Power, an APSC rule provides that if a customer wants a different rate than the rate the customer is assigned, it is the customer’s responsibility to initiate the rate change rather than the utility’s responsibility to bring the matter to the customer’s attention. Alabama Power asserted that the APSC has exclusive jurisdiction over rates and service regulations.
Capitol argued that the case centered around the fact that Alabama Power would not refund the money it had overcharged Capitol. According to Capitol, Alabama Power’s customer service should “be looking out for this stuff’ rather than expecting lay customers to know which rate would be most advantageous. Capitol states that it was forced to rely on an independent rate consultant and that it incurred additional fees in hiring that rate consultant. Capitol stated that it was not challenging Alabama Power’s authority to establish rate plans or the propriety of the amount designated as the LPTS rate or the LPLM rate.
Capitol further argued that Alabama Power Co. v. Patterson, 24 Ala.App. 558, 138 So. 417 (1931), rev’d on other grounds, 224 Ala. 3, 138 So. 421 (1931), provides that construing rate schedules and determining which schedule is applied to a given state of facts is a function of the courts, rather than the APSC. Alabama Power argued that Patterson was distinguishable and that some of the authority it had submitted to the trial court established that Capitol’s allegations were within the exclusive jurisdiction of the APSC. Following the hearing, the trial court took the matter under advisement.
After the hearing, Alabama Power submitted a letter brief to the trial court, responding to Capitol’s reliance on Patterson, essentially arguing that Patterson supported the dismissal of Capitol’s claims.[1]
On June 6, 2010, the trial court denied Alabama Power’s motion to dismiss. On July 16, 2010, Alabama Power petitioned this Court for a writ of mandamus directing the trial court to grant Alabama Power’s motion to dismiss.

Standard of Review

“ ‘ “Mandamus is a drastic and extraordinary writ, to be issued only where there is (1) a clear legal right in the petitioner to the order sought; (2) an imperative duty upon the respondent to perform, accompanied by a refusal to do so; (3) the lack of another adequate remedy; and (4) properly invoked jurisdiction of the court.” ’
“Ex parte Perfection Siding, Inc., 882 So.2d 307, 309-10 (Ala.2003) (quoting Ex parte Integon Corp., 672 So.2d 497, 499 (Ala.1995)). ‘The question of subject-matter jurisdiction is renewable by a petition for a writ of mandamus.’ Ex parte Liberty Nat’l Life Ins. Co., 888 So.2d 478, 480 (Ala.2003). A denial of a motion to dismiss for failure to exhaust administrative remedies is also reviewable by a petition for a writ of mandamus. See Ex parte Blue Cross & Blue Shield of Alabama, 582 So.2d 469, 472-73 (Ala.1991).”
Ex parte Cincinnati Ins. Co., 51 So.3d 298, 302 (Ala.2010).

Analysis

In its mandamus petition, Alabama Power argues that the trial court lacks subject-matter jurisdiction over Capitol’s claims *579 based on the filed-rate doctrine and because its action is a challenge to Alabama Power’s service regulations, as to which the APSC has jurisdiction, and Capitol failed to pursue administrative remedies through the APSC. Alabama Power argues that its motion to dismiss was due to be granted based on the evidence it presented with its motion to dismiss and in subsequent pleadings.
In its answer to Alabama Power’s petition, Capitol asserts that the filed-rate doctrine does not apply to its claims against Alabama Power and that it was not challenging a “practice” as that term is used by the APSC. Capitol argues that its claims fall within the APSC’s general-enforcement jurisdiction, rather than within the APSC’s exclusive jurisdiction. Thus, Capitol contends, it was not required to pursue administrative remedies through the APSC before filing its action in the Montgomery Circuit Court. Capitol asserts that the courts have recognized the right of a customer to sue Alabama Power for overcharges and the right of Alabama Power to sue customers for undercharges. Patterson, supra; Holloway v. Alabama Power Co., 568 So.2d 1245 (Ala.Civ.App.1990).
 In examining the pertinent statutes, we note:
“ ‘The fundamental principle of statutory construction is that words in a statute must be given their plain meaning.’ Mobile Infirmary Med. Ctr. v. Hodgen, 884 So.2d 801, 814 (Ala.2003). ‘When a court construes a statute, “[wjords used in [the] statute must be given their natural, plain, ordinary, and commonly understood meaning, and where plain language is used a court is bound to interpret that language to mean exactly what it says.” ’ Ex parte Berryhill, 801 So.2d 7, 10 (Ala.2001) (quoting IMED Corp. v. Systems Eng’g Assocs. Corp., 602 So.2d 344, 346 (Ala.1992)).”
Trott v. Brinks, Inc., 972 So.2d 81, 85 (Ala.2007). In § 37-1-31, the jurisdiction of the APSC is explained as follows:
“The rights, powers, authority, jurisdiction and duties by this title conferred upon the [APSC] shall be exclusive and, in respect of rates and service regulations and equipment, shall be exercised notwithstanding any rights heretofore acquired by the public under any franchise, contract or agreement between any utility and municipality, county or municipal subdivision of the state, and shall be exercised, so far as they may be exercised consistently with the Constitution of the state and of the United States, notwithstanding any right heretofore so acquired by any such utility.”
(Emphasis added.) This Court has interpreted the phrase “service regulation” in § 37-1-31 by using the definition of that term found in § 37-4-1(9), Ala.Code 1975, which defines “service regulation” as “every rule, regulation, practice, act, or requirement in any way relating to the service or facilities of a utility, including ... in general the quality of any commodity, service, or product supplied.” See QCC, Inc. v. Hall, 757 So.2d 1115, 1117 (Ala.2000). Further, § 37-1-32, Ala.Code 1975, provides:
“The [APSC] shall have general supervision of all persons, firms and corporations operating utilities mentioned in this title, shall inquire into the management of the business and shall keep itself informed as to the manner and method in which the business is conducted. It shall examine such utilities as often as may be necessary to keep informed as to their general condition, their franchises, capitalization, rates and other charges, and the manner in which their plants, equipment and other prop *580 erty are owned, leased, controlled, managed, conducted and operated, not only with respect to adequacy, security and accommodation afforded by their service, but also with respect to their compliance with the provisions of this title, and any other law or laws, with the orders of the commission, and with the charter and franchise requirements. It shall assemble and keep on file, available for the use of the public, full statistics on the foregoing, as well as on all other matters or things connected with such utilities as is necessary to a full knowledge of their business and affairs.”
Additionally,
“[u]pon a complaint in writing made against any utility by ... any affected person, that any rate, service regulation, classification, practice or service in effect or proposed to be made effective is in any respect unfair, unreasonable, unjust or inadequate, or unjustly discriminatory, or unduly preferential, or constitutes unfair competition, or that the service is inadequate or cannot be obtained, the [APSC] shall proceed, and without such complaint, the [APSC], whenever it deems that the public interest so requires, may proceed, after notice as provided in this division, to make such investigation as it may deem necessary or appropriate; but no order affecting such rates, service regulation, classification, practice, or service complained of shall be entered by the [APSC] -without notice and a hearing.”
§ 37-1-83, Ala.Code 1975.
The plain meaning of §§ 37-1-31 and 37-4-1(9) is that the jurisdiction of the APSC is exclusive, and, as it relates to service regulations, that jurisdiction is to be exercised “notwithstanding any rights heretofore acquired by the public.” Within the meaning of § 37-1-31, service regulations include “every rule ... practice, act ... in any way relating to the service or facilities of a utility, including ... in general the quality of any ... service ... supplied.” See § 37-4-1(9). Capitol’s claims challenge acts or practices relating to the utility service supplied by Alabama Power and the quality of that service — i.e., Alabama Power’s alleged failure to provide Capitol with electricity at the proper rate for Capitol’s needs or to inform it of the appropriate rate when it was eligible for a lower rate and refusing to reimburse Capitol for the overcharges resulting from that failure and Alabama Power’s alleged pattern and practice of committing like actions against its other commercial customers. Therefore, Capitol’s claims directly challenge service regulations within the meaning of §§ 37-1-31 and 37-4-1(9).
Section 37-1-32, Ala.Code 1975, defines the authority of the APSC over entities such as Alabama Power, stating:
“The [APSC] shall have general supervision of all persons, firms and corporations operating utilities mentioned in this title, shall inquire into the management of the business and shall keep itself informed as to the manner and method in which the business is conducted. It shall examine such utilities as often as may be necessary to keep informed as to their general condition, their franchises, capitalization, rates and other charges, and the manner in which their plants, equipment and other property are owned, leased, controlled, managed, conducted and operated, not only with respect to adequacy, security and accommodation afforded by their service, but also with respect to their compliance with the provisions of this title, and any other law or laws, with the orders of the commission, and with the charter and franchise requirements. It shall assemble and keep on file, available for the use of the public, full statistics on *581 the foregoing, as well as on all other matters or things connected with such utilities as is necessary to a full knowledge of their business and affairs.”
(Emphasis added.) By its plain language, this section grants the APSC general supervisory authority over entities such as Alabama Power, including the express right to make inquiries regarding the management of Alabama Power and its compliance with statutory authority and the orders of the APSC. The legislature’s statement in § 37-1-31 that the authority conferred on the APSC by Title 37 “shall be exclusive” grants the APSC general supervisory authority that excludes all other sources of authority. Given this broad statutory authority, the APSC had exclusive jurisdiction over Capitol’s claims in that the claims relate to the business management of Aabama Power in its pattern and practice of dealing with its commercial customers.
Applying §§ 37-1-31, 37-1-32, and 37-4-1(9), this Court reached a similar conclusion in QCC, Inc. v. Hall, supra. In that case, Hall asserted claims of fraud, fraudulent suppression, negligence, and wantonness against QCC, Inc., a long-distance-telephone-service provider. Hall alleged that QCC, in a practice called “slamming,” had changed her long-distance-telephone-service carrier without her permission, resulting in her paying higher long-distance telephone charges. QCC moved to dismiss Hall’s claims, arguing that “the APSC [had] primary and exclusive jurisdiction over Hall’s claims and that Hall did not exhaust her administrative remedies through pursuit of proceedings before the APSC.” 757 So.2d at 1117. The trial court denied QCC’s motion, and QCC obtained permission to appeal the decision under Rule 5(a), Aa.R.App.P.
Construing the language of § 37-4-1(9), this Court determined that Hall’s claims were “grounded on a challenge to service regulations,” under § 37-1-31, “because she attacked] a practice relating to the service of the utility.” 757 So.2d at 1117; see § 37-4-1(9) (defining a service regulation as “including] every ... practice ... in any way relating to the service ... of a utility”). Referencing the general authority granted the APSC by § 37-1-32 and the exclusive nature of the APSC’s jurisdiction as described in § 37-1-31, this Court concluded: “Under the APSC’s general supervisory power over the manner in which the business is conducted, a regulatory activity as to which its jurisdiction is exclusive, the circuit court lacked jurisdiction over the subject-matter of Hall’s claim.” 757 So.2d at 1117. This Court reversed the trial court’s decision after discussing and rejecting Hall’s arguments — which are unrelated to Capitol’s arguments in this action. See also Talton Telecomm. Corp. v. Coleman, 665 So.2d 914 (Ala.1995) (two Justices concurring in the main opinion and four Justices concurring in the result) (utility company had a uniform practice of imposing a 15-minute limitation on toll calls that originated from correctional facilities).
This Court discussed Taitón in QCC, stating:
“In Taitón ..., the plaintiffs challenged the conduct of telephone-service providers in limiting the duration of ‘collect’ telephone calls placed by prison inmates, a practice that substantially increased telephone bills because an additional collect call after the cut-off point to continue the conversation incurs higher rates at the outset of the new call. This Court reversed the trial court’s denial of a motion to dismiss the plaintiffs’ complaint and noted that the plaintiffs’ claim, based on the asserted absence of any tariff or other regulation permitting time limits resulting in substantially *582 higher telephone bills, involved ‘rates and service regulations’ and therefore ‘[fell] squarely within the scope of the APSC’s exclusive jurisdiction.’ Id. at 916.”
QCC, 757 So.2d at 1117.
Capitol argues that QCC and Taitón are distinguishable from this case because, it says, QCC involved a uniform policy by the utility that impacted the rate-related authority of the APSC, and Taitón involved an undisputed policy by the utility of imposing a time limit on all toll calls originating from correctional institutions. Capitol asserts that its claims relate to isolated and disputed acts by Alabama Power with regard to Capitol.
Although the facts in QCC and Taitón involved the rates charged by telephone-service providers, nothing in the reasoning of those decisions limits the authority of the APSC to rate-related issues. Furthermore, the statutory language of §§ 37-1-31 and 37-1-32 expressly grant the APSC authority over non-rate-related issues. Specifically, § 37-1-31 grants the APSC authority over “rates and service regulations ” and § 37-1-32 grants the APSC a broader, general supeiwisory authority over utilities. Accordingly, QCC and Tai-tón are not distinguishable from this case on the basis that the jurisdiction of the APSC is limited to rate-related issues or to practices that are undisputed, as Capitol suggests.
Finally, Capitol relies on two decisions it contends support its argument that the APSC does not have exclusive jurisdiction in this case. In Alabama Power Co. v. Patterson, 24 Ala.App. 558, 562, 138 So. 417, 420 (1931), rev’d, 224 Ala. 3, 138 So. 421 (1931), the Court of Appeals, in addressing a utility customer’s claim that it had been overcharged by Alabama Power, which had applied the wrong rate to the customer, stated:
“The construction of rate schedules, and determination of which schedule is effective to a given state of facts, is a purely judicial function, one subject to exercise by the courts alone, and the Alabama Public Service Commission has no power nor authority to determine that issue. Its function is to fix rates for the future, to pass upon what is and what is not a reasonable rate, not to decide which of two tariffs is in effect at a given time and applicable to a given state of facts.”
Patterson involved the merger or consolidation of two power companies and the question of what rate was applicable following the merger and how that rate had been established. The Alabama Supreme Court reversed the judgment of the Court of Appeals and in so doing, stated:
“As to whether or not the rate fixed for the city of Mobile between the electric company and its successor, the Gulf Company, is so much greater than the one applicable to the city of Montgomery as to operate as an unlawful discrimination, is a question not passed upon by the Court of Appeals. It is sufficient to suggest, however, that at the time the respective rates were fixed, the physical conditions existing between the Alabama Power Company and Montgomery and the electric or Gulf Company and Mobile were in no wise similar.
“If, since the consolidation of the companies, the conditions have become so identical or similar that these places should enjoy the same rate, redress should be first sought through the public service commission.”
224 Ala. at 5, 138 So. at 423.
Conversely, Holloway v. Alabama Power Co., 568 So.2d 1245 (Ala.Civ.App.1990), involved an action filed in the circuit court by Alabama Power seeking to recover a *583 sum of money it contended it had under-billed a customer for electricity. The jury returned a verdict for the customer, the trial court granted Alabama Power’s motion for a judgment notwithstanding the verdict (now a judgment as a matter of law), and the Court of Civil Appeals affirmed. However, Holloway does not support Capitol’s position, because Title 37 of the Alabama Code of 1975 grants the APSC jurisdiction over actions against public-utility companies; Title 37 does not purport to bestow jurisdiction over a utility’s actions against its customers.
For these reasons, both Patterson and Holloioay are materially distinguishable from this case. As explained above, the exclusive jurisdiction of the APSC, including jurisdiction over claims such as those at issue in this action, is based on the Alabama Legislature’s broad and express grant in § 37-1-31. Accordingly, Capitol’s reliance on Patterson and Holloway is misplaced.
The APSC is authorized under § 37-1-83 to process claims by any affected person challenging the adequacy of service, and the trial court’s judgment of dismissal for want of subject-matter jurisdiction would be without prejudice to the pursuit of any such recourse established by the legislature. Only after exhausting its administrative remedies may Capitol seek redress in the courts. See § 37-1-120 et seq., Ala.Code 1975 (setting out the appeals process after administrative remedies have been exhausted). It is not within the province of this Court to expand the remedies available in the absence of any legislative basis for an exception to the clear mandate for the exclusive jurisdiction of the APSC.

Conclusion

Based on the foregoing, we conclude that because Capitol failed to exhaust its administrative remedies with the APSC before seeking redress from the courts, dismissal is required. We grant Alabama Power’s petition for a writ of mandamus, and we direct the trial court to vacate its June 6, 2010, order and to dismiss Capitol’s action for failure to exhaust its administrative remedies.
PETITION GRANTED; WRIT ISSUED.
MALONE, C.J., and WOODALL, STUART, BOLIN, PARKER, and SHAW, JJ., concur.
MURDOCK, J., concurs in the result.
WISE, J., recuses herself.

. The letter brief is dated March 9, 2010, but the circuit clerk's office stamp indicates that the letter brief was filed on June 16, 2010.