QCC, Inc., appeals from the trial court's denial of its motion to dismiss a complaint filed by Pearl Hall in the Macon County Circuit Court against QCC, alleging fraud, fraudulent suppression, negligence, and wantonness. QCC is a non-facilities-based reseller of long-distance telecommunication services. This appeal involves the jurisdiction of the Alabama Public Service Commission ("APSC") over "slamming," the practice by which a telephone company changes a customer's long-distance-telephone-service carrier without the customer's permission.
According to Hall's complaint, she had purchased long-distance telephone service through ATT Corporation for many years before 1996. Hall alleges that, in November or December 1996, QCC changed her long-distance telephone service from ATT, without her permission. Hall claims that she did not request to employ QCC as her long-distance-telephone-service provider; that neither ATT nor QCC notified her of the change; that her long-distance telephone charges were higher with QCC than they had been with AT T; and that QCC had engaged in slamming. Hall alleges that a friend who did not have a telephone wrote Hall's telephone number on a contest entry form without her permission, that the contest entry form was actually an application form for QCC long-distance telephone service, and that her signature does not appear on the application. *Page 1117 
QCC moved to dismiss Hall's complaint on the ground that the APSC has primary and exclusive jurisdiction over Hall's claims and that Hall did not exhaust her administrative remedies through pursuit of proceedings before the APSC. The trial court denied QCC's motion to dismiss, but gave the statement called for by Rule 5(a), Ala. R. App. P, that would allow QCC to seek this Court's permission to appeal. The circuit court stated that there is a substantial ground for difference of opinion as to the following question (see Rule 5(a)):
 "Whether the Alabama Public Service Commission (`APSC') has primary and exclusive jurisdiction over plaintiff's [claims] that defendant QCC switched plaintiff's long-distance carrier improperly and without her permission and charged plaintiff increased fees and telephone rates as a result of that switch."
QCC argues that the APSC has primary and exclusive jurisdiction over Hall's claims, according to § 37-1-31, Ala. Code 1975. We agree. Section 37-1-31 provides:
 "The rights, powers, authority, jurisdiction and duties by this title conferred upon the commission shall be exclusive and, in respect of rates and service regulations and equipment, shall be exercised notwithstanding any rights heretofore acquired by the public under any franchise, contract or agreement between any utility and municipality, county or municipal subdivision of the state, and shall be exercised, so far as they may be exercised consistently with the Constitution of the state and of the United States, notwithstanding any right heretofore so acquired by any such utility."
Section 37-4-1(9) defines "service regulation" as "every rule, regulation, practice, act or requirement in any way relating to the service or facilities of a utility."[1] In TaltonTelecommunication Corp. v. Coleman, 665 So.2d 914 (Ala. 1995), the plaintiffs challenged the conduct of telephone-service providers in limiting the duration of "collect" telephone calls placed by prison inmates, a practice that substantially increased telephone bills because an additional collect call after the cut-off point to continue the conversation incurs higher rates at the outset of the new call. This Court[2] reversed the trial court's denial of a motion to dismiss the plaintiffs' complaint and noted that the plaintiffs' claim, based on the asserted absence of any tariff or other regulation permitting time limits resulting in substantially higher telephone bills, involved "rates and service regulations" and therefore "[fell] squarely within the scope of the APSC's exclusive jurisdiction." Id. at 916. See, also, Taffet v. Southern Co., 967 F.2d 1483 (11th Cir.) (en banc),cert. denied, 506 U.S. 1021 (1992) (exclusive jurisdiction of APSC required dismissal of fraud claims arising from allegations of fraudulent accounting of spare parts in inventory that improperly affected charges to subscribers).
Hall's claim is grounded on a challenge to service regulations, because she attacks a practice relating to the service of the utility. Under the APSC's general supervisory power over the manner in which the business is conducted, a regulatory activity as to which its jurisdiction is exclusive, the circuit court lacked jurisdiction over the subject-matter of Hall's claim.[3] *Page 1118 
QCC relies on Emperor Clock Co. v. ATT Corp., 727 So.2d 41
(Ala. 1998), in which this Court considered the merits of a counterclaim charging breach of contract and fraud arising from ATT's false representation that Emperor Clock Corporation would save money if it switched to ATT. This Court concluded that the counterclaim was legally insufficient because of the "filed rate doctrine." This rule, based upon Kansas City Southern Railway v.Carl, 227 U.S. 639 (1913), holds consumers to a conclusive presumption of knowledge of the contents of the tariff that the utility with which the consumer does business has filed with the appropriate regulatory agency. Because Emperor Clock was not alleging that the rate actually charged by ATT exceeded the applicable rate stated in its filed tariff, it was held to know ATT's rate when it became an ATT customer and, therefore, its fraud and breach-of-contract claims failed as a matter of law. While Emperor Clock was a dissatisfied consumer whose long-distance services were switched in such a way that it incurred higher telephone bills, the similarity of the EmperorClock case to the instant case ends at that point. Here, Hall alleges fraud in the formation of the relationship that led to the higher telephone charges; the "filed rate doctrine" is therefore inapplicable. Because Emperor Clock does not rely on the exclusive jurisdiction of the APSC as the basis for the dismissal of the complaint, it is not on point.
Hall contends that the APSC does not have exclusive jurisdiction over slamming because § 8-19B-1, Ala. Code 1975, enacted after the commencement of this action, made slamming unlawful and provided a penalty enforceable by the APSC. Section8-19B-1 provides:
 "(a) It shall be unlawful for any person or provider of telecommunication service to knowingly designate or change the provider of telecommunication service to a subscriber without the permission or authorization of such subscriber. An affirmative order for designation or change in such service provider shall be confirmed by any of the following methods:
 "(1) Obtaining the consumer's written authorization.
 "(2) Obtaining the consumer's electronic authorization by use of an 800 number.
 "(3) Having the consumer's oral authorization verified by an independent third party.
 "(4) Sending an information package, including a prepaid, returnable postcard, within three days of the consumer's request for a PIC change, and waiting 14 days before submitting the consumer's order to the LEC, so that the consumer has sufficient time to return the postcard denying, cancelling, or confirming the change order.
 "(b) Any person or provider of telecommunication service knowingly designating or changing the subscriber's telecommunication service provider in violation of subsection (a) shall credit or refund to the subscriber any amounts billed or paid for charges associated with such service and the unauthorized change, shall pay to other telecommunication providers any and all fees set by the Public Service Commission for such designation or change, and may be penalized up to five hundred dollars ($500) per unauthorized change by the Public Service Commission to be deposited to the State General Fund.
 "(c) the use of contest or sweepstake entries of any kind which results in changing the provider of a subscriber's telecommunication service is prohibited and subject to penalties as described above. *Page 1119 
 "(d) This section shall be enforced by the Public Service Commission. The commission may promulgate rules and regulations pursuant to this section."
This statute became effective August 1, 1997, as previously noted, after Hall had commenced her action against QCC. However, QCC argues that the APSC had jurisdiction over slamming well before the enactment of § 8-19B-1. QCC points to a series of orders entered by the APSC, before the enactment of § 8-19B-1, in which the APSC exercised jurisdiction over slamming allegations. In two of these cases, APSC v. Winstar, APSC order No. 25313 (May 31, 1996); and APSC v. Home Owners Long Distance, APSC order No. 25314 (Aug. 12, 1996), the orders stated: "The APSC has exclusive jurisdiction of the action complained of pursuant to section 37-1-31."
We construe § 8-19B-1 as an expression by the Legislature of the need to deal specifically with the practice of slamming. Because the previous grant of authority to the APSC lacked the specificity of the legislation added by the enactment of the new statute, § 8-19B-1 cannot reasonably be read as an indication of a lack of authority by the APSC prior to its enactment. While the conduct of a regulatory agency cannot create jurisdiction in the agency, its activity, considered in light of a statutory grant of exclusive jurisdiction over matters concerning practices of a utility, is very persuasive. The language conferring exclusive jurisdiction in § 37-1-31 can hardly be described as ambiguous. However, even if it were ambiguous, the United States Supreme Court has addressed the question of ambiguity, in the following manner:
 "`"It is settled that courts should give great weight to any reasonable construction of a regulatory statute adopted by the agency charged with the enforcement of that statute. The Comptroller of the Currency is charged with the enforcement of banking laws to an extent that warrants the invocation of this principle with respect to his deliberative conclusions as to the meaning of these laws."' Clarke v. Securities Industry Assn., 479 U.S. 388, 403-404, (1987) (quoting Investment Company Institute v. Camp, 401 U.S. 617, 626-627 (1971)).
 "Under the formulation now familiar, when we confront an expert administrator's statutory exposition, we inquire first whether `the intent of Congress is clear' as to `the precise question at issue.' Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837, 842 (1984). If so, `that is the end of the matter.' Ibid. But `if the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute.' Id., at 843. If the administrator's reading fills a gap or defines a term in a way that is reasonable in light of the legislature's revealed design, we give the administrator's judgment `controlling weight.' Id., at 844."
NationsBank of North Carolina, N.A. v. Variable Annuity Life Ins.Co., 513 U.S. 251, 256-57 (1995). The action of the APSC in regulating slamming pursuant to Title 37, before the Legislature enacted § 8-19B-1, supports the view that the new statute did not add authority to the powers the Legislature previously conferred in broad terms on the APSC in § 37-1-31.
Moreover, in order to accept Hall's contention as to the effect of § 8-19B-1, we would have to ignore § 37-2-3, pursuant to which the APSC "is charged with the duty of supervising, regulating and controlling all transportation companies doing business in this state, in all matters relating to the performance of their public duties and their charges therefor, and of correcting abuses therein by such companies" *Page 1120 
and § 37-1-32, under which the APSC has "general supervision of . . . corporations operating utilities . . ., [and] shall inquire into the management of the business and shall keep itself informed as to the manner and method in which the business is conducted." See, also, Talton, 665 So.2d at 918-19, where §37-1-32, along with § 37-1-83, is recognized as the basis for authorizing consumers to file written complaints with the APSC concerning unfair or unjust practices, to exhaust the statutory remedies available to them.[4]
Finally, Hall argues that § 37-1-35(4) saves her fraud claim. However, that statute reserves to municipalities the authority to protect the public against fraud in matters other than rates and service regulations and equipment. Hence, it has no application here, for two reasons — (1) it regulates the authority of municipalities and (2) Hall's fraud claim arises with respect to a matter involving the performance of duties and the correction of abuses under § 37-2-3 and unfair or unjust practices under §37-1-83.
The trial court's order denying QCC's motion to dismiss is hereby reversed, and the cause is remanded for the trial court to enter an order dismissing Hall's complaint.
REVERSED AND REMANDED WITH INSTRUCTIONS.
HOOPER, C.J., and MADDOX, HOUSTON, COOK, SEE, BROWN, and ENGLAND, JJ., concur.
[1] Although § 37-4-1(9) is part of the chapter entitled "Public Utilities Other Than Transportation Companies or Motor Vehicle Carriers," and although a telephone company is included in the definition of "transportation company" appearing at § 37-2-1, the APSC is authorized under § 37-1-83 to process claims by any affected person challenging "any rate, service regulation, classification, practice or service in effect or proposed to be made effective [that] is in any respect unfair, unreasonable, [or] unjust."
[2] Two Justices concurred in the main opinion in Talton, and four Justices concurred in the result.
[3] Hall relies upon Nader v. Allegheny Airlines, Inc.,426 U.S. 290 (1976), in which the United States Supreme Court permitted Ralph Nader to sue for failure of the airline to disclose its deliberate overbooking practices. As Talton notes, 656 So.2d at 918, Nader is distinguishable, because the applicable federal statute did not contain provisions for exclusivity of regulatory-agency jurisdiction such as are found in § 37-1-31.
[4] Hall alleges that before she filed her lawsuit she filed a complaint with the APSC and then heard nothing further from the APSC. But, according to an affidavit filed by QCC, the APSC closed Hall's file after QCC responded by letter to Hall's complaint and refunded Hall 50% of the cost of all calls processed by QCC. Because the sufficiency of the APSC's action can be reviewed only by the Circuit Court of Montgomery County, pursuant to § 37-1-20, the review of the APSC's action in regard to Hall's complaint is not before us; thus, we do not reach the question of the sufficiency of any action taken by the APSC in response to Hall's complaint.