LYONS, Justice.
The United States District Court for the Northern District of Alabama has certified the following question to this Court, pursuant to Rule 18, Ala. R.App. P.:
“Whether a company that merely provides billing and collections services for local or long distance telephone carriers is considered a ‘utility’ under Alabama law, thereby subjecting the billing and collections company to the exclusive jurisdiction of the Alabama Public Service Commission?”
The case from which this question comes is one of two consolidated actions in the United States District Court for the Northern District of Alabama. In both actions, the plaintiffs have asserted class- *801 action claims against various defendants for “slamming” — slamming is the practice by which a telephone company changes a customer’s long-distance telephone service carrier without the customer’s permission. QCC, Inc. v. Hall, 757 So.2d 1115, 1116 (Ala.2000).
One of the defendants, OAN Services, Inc. (“OAN”), is a billing and collections clearinghouse whose clients include a variety of long-distance carriers, including Long Distance Services, Inc. (“LDSI”), another defendant in this action. OAN has moved to dismiss this action for lack of jurisdiction, contending that it is subject to the exclusive jurisdiction of the Alabama Public Service Commission (“APSC”). OAN argues that all slamming cases occurring in the state of Alabama are within the “primary and exclusive jurisdiction” of the APSC, under § 37-1-31, Ala.Code 1975. OAN claims that, because of this exclusive jurisdiction, the district court lacks subject-matter jurisdiction over the controversy. Section 37-1-31 states:
“The rights, powers, authority, jurisdiction and duties by this title conferred upon the commission shall be exclusive and, in respect of rates and service regulations and equipment, shall be exercised notwithstanding any rights heretofore acquired by the public under any franchise, contract or agreement between any utility and municipality, county or municipal subdivision of the state, and shall be exercised, so far as they may be exercised consistently with the Constitution of the state and of the United States, notwithstanding any right heretofore so acquired by any such utility.”
(Emphasis added.)
OAN bases its argument on its understanding of the holding of this Court in QCC, Inc. v. Hall, supra, 757 So.2d 1115. OAN contends that Hall holds that the APSC has exclusive jurisdiction over all slamming complaints. However, in Hall we held that the APSC has primary and exclusive jurisdiction over claims that a “non-facilities-based reseller of long-distance communication services” had switched a customer’s long-distance carrier without her permission. After noting the exclusive authority of the APSC over “service regulations” in § 37-1-31 and the definition of a “service regulation” in § 37-4-1(9), as including a practice relating to the service of a utility, we concluded that the plaintiffs claim in Hall was “grounded on a challenge to service regulations, because she attacked] a practice relating to the service of [a] utility.” Hall, 757 So.2d at 1117 (emphasis added). Hence, this Court treated QCC as a utility subject to the jurisdiction of the APSC. Hall, therefore, does not support the broad proposition that the APSC has exclusive jurisdiction over all slamming complaints regardless of whether the claim was asserted against a utility.
Because Hall involved claims accruing before the enactment of § 8-19B-1, Ala.Code 1975, effective August 1, 1997, a statute dealing specifically with the APSC’s regulation of slamming, this Court did not have occasion to deal with the extent to which § 8-19B-1 broadened the jurisdiction of the APSC as to incidents of slamming by entities other than utilities. Further, because we were dealing with a utility in Hall, our conclusion that the enactment of § 8-19B-1 in 1997 did not indicate a lack of authority in the APSC before its enactment must be read in the context of authority over the activities of a utility.
Section 8-19B-1 provides:
“(a) It shall be unlawful for any person or provider of telecommunication service to knowingly designate or change the provider of telecommunication service to a subscriber without the permission or authorization of such sub *802 scriber. An affirmative order for designation or change in such service provider shall be confirmed by any of the following methods:
“(1) Obtaining the consumer’s written authorization.
“(2) Obtaining the consumer’s electronic authorization by use of an 800 number.
“(3) Having the consumer’s oral authorization verified by an independent third party.
“(4) Sending an information package, including a prepaid, returnable postcard, within three days of the consumer’s request for a PIC change, and waiting 14 days before submitting the consumer’s order to the LEC, so that the consumer has sufficient time to return the postcard denying, cancel-ling, or confirming the change order.
“(b) Any person or provider of telecommunication service knowingly designating or changing the subscriber’s telecommunication service provider in violation of subsection (a) shall credit or refund to the subscriber any amounts billed or paid for charges associated with such service and the unauthorized change, shall pay to other telecommunication providers any and all fees set by the Public Service Commission for such designation or change, and may be penalized up to five hundred dollars ($500) per unauthorized change by the Public Service Commission to be deposited to the State General Fund.
“(c) The use of contest or sweepstake entries of any kind which results in changing the provider of a subscriber’s telecommunication service is prohibited and subject to penalties as described above.
“(d) This section shall be enforced by the Public Service Commission. The commission may promulgate rules and regulations pursuant to this section."
(Emphasis added.)
Section 8-19B-1 confers upon the APSC exclusive jurisdiction over slamming by “any person or provider of telecommunication service.” It became effective August 1, 1997. The term “person,” as defined in § 1-1-1, Ala.Code 1975, includes a corporation as well as a natural person. Hence, any claims that are subject to § 8-19B-1 are within the exclusive jurisdiction of the APSC. Slamming claims against OAN are governed by this statute if they arose on or after August 1,1997.
The answer to the question posed by the district court as to claims arising before August 1, 1997, turns on whether OAN is a utility. The Legislature has defined “utility” in the context of the authority of the APSC. Section 37-1-32, Ala. Code 1975, provides that the APSC has general supervision of all persons, firms, and corporations operating utilities. Section 37-1-30, Ala.Code 1975, provides that the term “utility” or “utilities” includes all utilities defined under § 37-2-1 and § 37-4-1. Section 37-2-1 defines a “transportation company” as “every person not engaged solely in interstate commerce or business that now or may hereafter own, operate, lease, manage or control, as common carriers or for hire[,] ... any telephone line.”
Section 37-4-1(7) defines “utility”:
“Such term shall mean and include every person, not engaged solely in interstate business, that now or may hereafter own, operate, lease or control:
“a. Any plant, property or facility for the generation, transmission or distribution, sale or furnishing to or for the public of electricity for light, heat or power or other uses, including any conduits, ducts, or other devices, materials, apparatus, or property for containing, holding or carrying con *803 ductors used or to be used for the transmission of electricity for light, heat, or power, or other uses.
“b. Any plant, property, or facility for the manufacture, storage, distribution, sale or furnishing to or for the public of natural or manufactured gas for light, heat or power or other uses.
“c. Any plant, property or facility for the supply, storage, distribution, or furnishing to or for the public of water for manufacturing, municipal, domestic or other uses.
“d. Any plant, property or facility for the production, transmission, conveyance, delivery or furnishing to or for the public of steam for heat or power, or other uses.
“e. Any public wharf, dock or terminal.
“f. Any toll bridge or road.
“g. Any boat line propelled by any power and not regulated by the laws of this state heretofore or hereafter enacted as a steamboat or steam packet line.
“The term ‘utility’ shall also mean and include two or more utilities rendering joint service.”
The activity described by these statutes that most closely resembles the activities of OAN appears to be an activity referred to in § 37-2-1, which defines “transportation company” as including a business that owns, operates, leases, manages, or controls any telephone line “as common carriers or for hire.” A company that merely provides billing and collections services for a long-distance telephone carrier simply does not fit within any of the definitions of “utility” set forth in the Code sections quoted above. Further, a determination that a “utility” includes a company that merely provides billing and collections services for carriers would be inconsistent with the rationale of prior decisions of this Court dealing with other companies that conduct activities similar to those of regulated utilities. In Southern Liquid Gas Co. v. City of Dothan, 253 Ala. 350, 354, 44 So.2d 744, 747 (1950), the Court, holding that a gas company was not a “utility,” wrote:
“[A]n essential element of a utility is that it is both serving and is constituted to serve all the inhabitants in the area who comply with reasonable conditions. In the case at bar there is nothing to show that appellant was organized as a utility or is acting as such. The mere fact that it is ‘a gas distributing company, distributing artificial gas by tanks, drums, cylinders or otherwise’ does not show that it must do so upon compliance by its customer with certain conditions.”
Moreover, in Coastal States Gas Transmission Co. v. Alabama Public Serv. Comm’n, 524 So.2d 357 (Ala.1988), the Court held that a pipeline company was not a “utility” under § 34-4-1(7), because the company sold natural gas to select customers, rather than to the general public. A company “merely providing] billing and collections services for local or long distance telephone carriers,” as the certified question suggests OAN does, cannot be considered a “utility” under the Alabama statutes and caselaw concerning the jurisdiction of the APSC.
We summarize our answer: Claims against OAN arising before August 1, 1997, are not subject to the exclusive jurisdiction of the APSC. Claims arising on or after August 1, 1997, are subject to the exclusive jurisdiction of the APSC.
QUESTION ANSWERED.
HOOPER, C.J., and MADDOX, HOUSTON, COOK, SEE, BROWN, and ENGLAND, JJ., concur.