On Application for Rehearing

BRYAN, Judge.
This court’s opinion of November 18, 2011, is withdrawn, and the following is substituted therefor.
Daniel Senior Living of Inverness I, LLC, d/b/a Danberry at Inverness (“Dan-berry”), appeals from a judgment of the Montgomery Circuit Court affirming the issuance of an emergency certificate of need (“CON”) to STV One Nineteen Senior Living, LLC, d/b/a Somerby at St. Vincent’s One Nineteen (“Somerby”). We reverse and remand.

Procedural History and Factual Baclcground

On March 25, 2010, the Statewide Health Coordinating Council (“the Council”), in response to Somerby’s request, voted to adjust the State Health Plan to indicate the need for 164 specialty-care assisted-living-facility (“SCALF”) beds in Shelby County.[1] On March 31, 2010, then Governor Bob Riley approved the adjust *189 ment to the State Health Plan. The record on appeal indicates that SCALF services are special services that aid patients with dementia-related impairments. Before the Council adjusted it, thé State Health Plan had indicated a need for 96 SCALF beds in Shelby County. However, evidence submitted to the Council revealed that there were actually 128 SCALF beds in service in that county. Thus, the adjustment to the State Health Plan to indicate the need for 164 SCALF beds in Shelby County essentially reflected a need for an additional 86 SCALF beds above the 128 SCALF beds already in service.
After the adjustment to the State Health Plan, both Somerby and Danberry applied for a CON to convert 24 of their existing assisted-living-facility (“ALF”) beds in Shelby County to SCALF beds. However, on May 28, 2010, the same day that Somerby filed its standard CON application, Somerby also applied for an emergency CON, see § 22-21-268, Ala. Code 1975, to convert 24 of its existing ALF beds in Shelby County to SCALF beds. That is, Somerby applied for both a standard, nonemergency CON and an emergency CON in an attempt to convert 24 of its ALF beds to SCALF beds. Unlike an applicant seeking a standard, non-emergency CON, an applicant seeking an emergency CON does not need to provide notice to interested parties, and the process for granting an emergency CON is considerably expedited. See Rule 410-1-10 — .01(1), Ala. Admin. Code (State Health Planning and Development Agency). As we will discuss below, an emergency CON may be issued as a result of “unforseen events” that “endanger the health and safety of the patients.” § 22-21-268.
Danberry opposed Somerby’s emergency CON application. On June 16, 2010, the Certificate of Need Review Board (“CONRB”) of the State Health Planning and Development Agency (“SHPDA”) considered Somerby’s emergency CON application, receiving supporting evidence from Somerby and evidence in opposition from Danberry. That same day, the CONRB approved Somerby’s application for an emergency CON. The CONRB issued a final, written decision granting Somerby the emergency CON on July 1, 2010, slightly more than a month after Somerby had filed its application. After exhausting its administrative challenges to the CONRB’s decision, Danberry appealed to the circuit court, pursuant to § 41-22-20, Ala.Code 1975. The circuit court entered a judgment affirming the CONRB’s decision to issue Somerby an emergency CON for the 24 SCALF beds. Danberry filed a timely notice of appeal to this court, and we heard oral argument on September 20, 2011.

Standard of Review

In reviewing an administrative agency’s decision, this court’s standard of review is the same as that of the circuit court. Alabama Dep’t of Envtl. Mgmt. v. Legal Envtl. Assistance Found., Inc., 973 So.2d 369, 375 (Ala.Civ.App.2007). Section 41-22-20(k), Ala.Code 1975, governs our review and the circuit court’s review of the CONRB’s decision in this case. In pertinent part, it provides:
“(k) Except where judicial review is by trial de novo, the agency order shall be taken , as prima facie just and reasonable and the court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact, except where otherwise authorized by statute.... The court may reverse or modify the decision or grant other appropriate relief from the agency action ... if the court finds that the agency action is due to be set aside or modified under standards set forth in appeal or review statutes applicable to *190 that agency or if substantial rights of the petitioner have been prejudiced because the agency action is any one or more of the following:
“(1) In violation of constitutional or statutory provisions;
“(2) In excess of the statutory authority of the agency;
“(3) In violation of any pertinent agency rule;
“(4) Made upon unlawful procedure;
“(5) Affected by other error of law;
“(6) Clearly erroneous in view of the reliable, probative, and substantial evidence of the whole record; or
“(7) Unreasonable, arbitrary, or capricious, or characterized by an abuse of discretion or a clearly unwarranted exercise of discretion.”
Our review of the CONRB’s conclusions of law and its application of the law to the facts is de novo. Ex parte Wilbanks Health Care Servs., Inc., 986 So.2d 422, 425 (Ala.2007).

Discussion

On appeal, Danberry argues that the CONRB erred in issuing an emergency CON to Somerby because, Danberry says, Somerby’s emergency CON application did not present an “emergency” under § 22-21-268, Ala.Code 1975. We agree. Section 22-21-268 provides:
“Any person may apply, either independently and without notice under Section 22-21-267[2] or as a part of an application filed under Section 22-21-267, for an emergency certificate of need for the authorization of capital expenditures made necessary by unforeseen events which endanger the health and safety of the patients. Emergency capital expenditures include, but are not necessarily limited to, emergency expenditures to maintain quality care, to overcome failure of fixed equipment, including heating and air conditioning equipment, elevators, electrical transformers and switch gear, sterilization equipment, emergency generators, water supply and other utility connections. Applications for emergency certificates of need shall include a description of the work to be done and/or equipment to be purchased, the cost thereof, justification for considering the capital expenditure as being of an emergency nature and such other information as the SHPDA may require. Emergency certificates of need issued hereunder shall be subject to such special limitations and restrictions as the duration and right of extension or renewal as may be prescribed in the rules and regulations adopted by the SHPDA.”
Rule 410 — 1—10—.01(1), Ala. Admin. Code (SHPDA), lists the same examples of emergency capital expenditures that are contained in § 22-21-268, except that the rule also lists, as an example of an emergency capital expenditure, emergency expenditures to overcome “damage caused by natural or manmade disaster.” The rule provides, in pertinent part:
“Emergency capital expenditures include, but are not necessarily limited to, emergency expenditures to maintain quality care, overcome failure of fixed equipment, including heating ■ and air conditioning equipment, elevators, electrical transformers, and switch gear, sterilization equipment, emergency generators, water supply and other utility connections and damage caused by natural or manmade disaster.”
Rule 410 — 1—10—.01(1) (emphasis added). Under Rule 410 — 1—10—.01(l)(a), an appli *191 cant for an emergency CON “must clearly demonstrate that an emergency exists.”
Section 22-21-268 provides that an emergency CON may be issued for expenditures “made necessary by unforeseen events” that “endanger the health and safety of the patients.” The statute then lists several specific examples of events, all involving the failure of hospital equipment, that would qualify for an emergency CON, provided that those events endanger the health and safety of the patients. Rule 410 — 1—10—.01(1) provides another specific example: “damage caused by natural or manmade disaster.” Under the .principle of ejusdem generis, “when general words or phrases follow or precede a specific list of classes of persons or things, the general word or phrase is interpreted to be of the same nature or class as those named in the specific list.” Cocking v. City of Montgomery, 48 So.3d 647, 650 (Ala.Civ.App.2010). Thus, to merit an emergency CON, there must be an identifiable, unforseen event, in the nature of or comparable to equipment failure, natural disaster, or manmade disaster, that endangers the health and safety status of patients.
None of the characteristics of an emergency discussed in § 22-21-268 and Rule 410 — 1—10—.01(1) are found in this case. In its emergency CON application, Somerby stated that it was seeking an emergency CON “based on its current inability to properly care for patients suffering from dementia related conditions.” Somerby asserted that “[without CON approval Somerby will be forced to relocate patients facing dementia related care.” Somerby’s application also noted that the population of Shelby County is rapidly growing and that the county is medically underserved with respect to SCALF services. In its written decision granting the emergency CON to Somerby, the CONRB noted the rapid population growth in Shelby County, particularly among the elderly. The decision stated that “there is an immediate need for SCALF beds within the community to prevent the stressful and unnecessary separation of families.” The decision further found that granting Somerby an emergency CON would allow Somerby “to offer a continuum of care to residents by including independent living apartments, ALF apartments and SCALF apartments all within the same facility.”
In seeking an emergency CON, Somer-by essentially relied on the same evidence that it relied on in its application for a standard, nonemergency CON. Somerby’s application for an emergency CON was based on evidence indicating that there is a general need for SCALF beds in Shelby County, that Somerby could provide services that would meet this need, and that those services would be valuable and convenient. However, that application does not demonstrate an emergency as contemplated by § 22-21-268 and Rule 410-1-10-.01(1). Somerby’s emergency CON application is essentially a standard CON application disguised as an emergency CON application.
We recognize that “[(Interpretations of an act by the administrative agency charged with its enforcement, though not conclusive, are to be given great weight by the reviewing court.” Hulcher v. Taunton, 388 So.2d 1203, 1206 (Ala.1980). Similarly, “an agency’s interpretation of its own regulation must stand if it is reasonable, even though it may not appear as reasonable as some other interpretation.” Ferlisi v. Alabama Medicaid Agency, 481 So.2d 400, 403 (Ala.Civ.App.1985). However, “[a]n administrative agency cannot usurp legislative powers or contravene a statute.” Ex parte Jones Mfg. Co., 589 So.2d 208, 210 (Ala.1991). Insofar as the CONRB’s granting Somerby an emergency CON may be viewed as demonstrating a *192 liberal interpretation of the statutory and regulatory provisions relating to emergency CONs, that interpretation is contrary to the clear intent of those provisions. As the Alabama Supreme Court has observed:
“ ‘ “ ‘It is settled that courts should give great weight to any reasonable construction of a regulatory statute adopted by the agency charged with the enforcement of that statute....”’ Clarke v. Securities Industry Assn., 479 U.S. 388, 403-404, 107 S.Ct. 750, 98 L.Ed.2d 757 (1987) (quoting Investment Company Institute v. Camp, 401 U.S. 617, 626-627, 91 S.Ct. 1091, 28 L.Ed.2d 367 (1971)).
“‘Under the formulation now familiar, when we confront an expert administrator’s statutory exposition, we inquire first whether “the intent of Congress is clear” as to “the precise question at issue.” Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837, 842, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984). If so, “that is the end of the matter.” Ibid. But “if the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency’s answer is based on a permissible construction of the statute.” Id., at 843, 104 S.Ct., at 2782. If the administrator’s reading fills a gap or defines a term in a way that is reasonable in light of the legislature’s revealed design, we give the administrator’s judgment “controlling weight.” Id., at 844, 104 S.Ct., at 2782.’ ”
QCC, Inc. v. Hall, 757 So.2d 1115, 1119 (Ala.2000) (quoting NationsBank of North Carolina, N.A. v. Variable Annuity Life Ins. Co., 513 U.S. 251, 256-57, 115 S.Ct. 810, 130 L.Ed.2d 740 (1995)).
By providing specific examples, the legislature clearly defined the type of situation that constitutes an emergency under § 22-21-268. The situation in this case clearly does not fit the “emergency” category intended by that statute and reflected in Rule 410-1-10-01(1). The CONRB’s reading of the provisions relating to emergency CONs to include Somerby’s situation as an emergency is not “ ‘reasonable in light of the legislature’s revealed design.’ ” Hall, 757 So.2d at 1119. Applying an interpretation as broad as the one evidenced by the CONRB would essentially nullify the statute. Under such a construction, a standard, nonemergency CON application — one that reflects a general need for health services and the applicant’s qualifications for meeting that need — could be successfully packaged as an emergency CON application, thereby avoiding notice to interested parties and a potentially lengthy approval process. Surely the legislature did not intend such a result.
The CONRB erred by granting Somer-by an emergency CON. Accordingly, we reverse the circuit court’s judgment affirming the CONRB’s decision, and we remand the case. In its reply brief to this court, Danberry stipulated that, should this court reverse the circuit court’s judgment, “Somerby could keep their existing SCALF residents, but could not take new ones unless [Somerby] obtain[s] SCALF bed authorization through the ordinary CON process.” Danberry’s reply brief at 24. Thus, on remand, the circuit court is instructed to enter an order vacating the emergency CON but to stay enforcement of that order until a final determination is made on Somerby’s standard, nonemer-gency CON application so as to allow Som-erby residents who are currently in SCALF beds to remain in those beds. Furthermore, the circuit court is instructed to order Somerby not to admit new SCALF residents during the pendency of its standard, nonemergency CON application. We do not decide which, if any, party should obtain the CON for the 36 *193 SCALF beds needed in Shelby County, a need indicated in the State Health Plan; therefore, the circuit court should avoid entering any order that impairs the decision-making process of the CONRB on that point.
APPLICATION FOR REHEARING OVERRULED; OPINION OF NOVEMBER 18, 2011, WITHDRAWN; OPINION SUBSTITUTED; REVERSED AND REMANDED WITH INSTRUCTIONS.
MOORE, J., concurs specially, with writing. '
THOMAS, J., concurs in the rationale in part and concurs in the result, with writing.
THOMPSON, P.J., and PITTMAN, J., dissent, with writings.

. The State Health Plan is a comprehensive plan that "provide[s] for the development of health programs and resources to assure that quality health services will be available and accessible in a manner which assures continuity of care, at reasonable costs, for all residents of the state.” § 22-21-260(13), Ala. Code 1975. The Council prepares, reviews, revises, and approves the State Health Plan. § 22-4-8(b)(2), Ala.Code 1975.

2. Section 22-21-267, Ala.Code 1975, concerns the CON application process.