PITTMAN, Judge.
In these consolidated appeals, the Alabama State Health Planning and Development Agency (“SHPDA”) and ACE Home Health Care, LLC, appeal from a judgment entered by the Montgomery Circuit Court in two administrative appeals brought by Gentiva Health Services, Inc. (“Gentiva”), and Amedisys Home Health, Inc., of Alabama (“Amedisys”) in which the circuit court reversed the decision of SHPDA’s Certificate of Need Review Board (“CONRB”) granting authority, in the form of a Certificate of Need (“CON”), to ACE Home Health Care, LLC, to operate a home-health-care practice in Madison County. Because the CONRB’s decision was supported by substantial evidence and was not entered in violation of any applicable law, we reverse the circuit court’s judgment.
The record reveals that on March 30, 2012, an application for a CON was sub *933 mitted to SHPDA by Paul Clennon in which Clennon sought a CON to operate a home-health-care and hospice-care entity in Madison County called “ACE Home Health & Hospice Care, LLC.” After SHPDA’s executive director had notified Clennon that home-health-care and hospice-care services would require separate applications and directed him to address the issue within BO days, Clennon amended the application within that period so as to clarify his intent to apply for a home-health-care CON only and to identify the entity he owned (and in whose name the CON would be issued) as “ACE Home Health Care, LLC”; Clennon also sought to simultaneously file papers with the Madison County probate office to change the corporate name of “ACE Home Health & Hospice Care, LLC” to remove any references to hospice care, but he was informed by representatives at that office that he could not then file those papers because of a processing backlog in the corporations section of the office of the Alabama Secretary of State. Clennon therefore reserved the right to use the business name “ACE Home Health Care, LLC” on behalf of the corporate entity, and that name has been used in literature issued by the corporate entity since then; we will hereinafter refer to that entity as “ACE” for the sake of simplicity.
ACE’s plan, as summarized by SHPDA’s staff, is to provide “a broad range of health care services,” such as “skilled nursing, home health aid[ ], physical, occupational, speech, respiratory therapy and social services,” primarily (but not exclusively) to veterans of the armed services. The principals of ACE, who are military veterans, claimed to have considerable knowledge of problems faced by patients needing care following military service and expressed their intent to prefer employment of veterans to serve veterans.
After the submission of the amended CON application, three home-health-care providers doing business in Madison County — Gentiva, Amedisys, and Alacare Home Health and Hospital Services, Inc. (“Ala-care”), appeared in opposition to the CON application and requested a contested-case hearing before an administrative-law judge (“ALJ”). Upon the conclusion of a two-day hearing, at which the parties presented testimony and documentary evidence, the ALJ issued a recommended order in which he concluded that, because “[ACE] Home Health and Hospice Care, LLC[,] was a legally formed entity at the time of the application, and th[at] entity was the one that originally sought to file its ... original application, the change in name on the application form ... should not render the application itself void.” However, on the merits of ACE’s CON application, the ALJ opined that, although the proposed project as submitted by ACE “would be in conformity with the most recent” State Health Plan (“SHP”), SHPDA should not issue a CON to ACE because of perceived flaws in the project’s economic feasibility and the availability of alternative providers. ACE filed exceptions to the ALJ’s findings and conclusions, and SHPDA’s executive director advised ACE that those exceptions would be ratified or rejected at an upcoming meeting of the CONRB.
On December 12, 2012, the CONRB met to consider whether to adopt or reject the ALJ’s recommendation. At that meeting, counsel for ACE introduced herself and noted the presence of Clennon, Dr. Tonia Butler, and three other persons connected with ACE at the meeting; she then indicated that Clennon would address the CONRB about the proposed project. The chairman of the CONRB overruled an objection lodged by counsel for Amedisys to Clennon’s addressing the CONRB, but cautioned Clennon that his remarks were *934 to be confined to matters within the record made before the ALJ; Clennon then addressed the CONRB, after which the CONRB heard statements from Dr. Butler (another ACE representative) and further arguments and rebuttal from counsel for the parties. Afterwards, a member of the CONRB moved to reject the ALJ’s recommendation and to approve the CON application, remarking that ACE’s personnel had adduced “evidence of a fledgling start-up that’s got a lot to learn” and suggesting that “they’re going to make some mistakes,” but observing that “they’re at least looking at doing it with their own money, not our tax money.” Another member of the CONRB, who seconded the motion, identified himself as a disabled armed-service retiree from Madison County and stated that “we are going to experience as the wars draw down more veterans coming back home and needing care there.”[1] Finally, a third member of the CONRB identified himself as a former member of both the United States Army and the Marine Corps; although acknowledging the existence of Veterans Administration hospitals to provide care for veterans, that member opined that the “veteran population is woefully underserved.”
The CONRB then voted on the motion and by a majority vote agreed to it, subsequently issuing an order memorializing its decision. Because the CONRB’s order was issued after the application had already been considered by an ALJ as a contested case, and because reconsideration was not sought, the granting of the application by the CONRB constituted the “final decision” of SHPDA under subdivisions (6) and (12) of Ala.Code 1975, § 22-21-275, and Ala. Admin. Code (SHPDA), Rules 410-1-8.06 and 410-1-8-.07. A CON was then issued to ACE in January 2013.
Gentiva, Amedisys, and Alacare each filed notices of appeal from SHPDA’s decision to issue a CON to ACE, and thereafter Gentiva and Alacare, acting jointly, and Amedisys, acting separately, filed petitions seeking judicial review of the administrative decision in the circuit court;[2] the two actions were ordered consolidated on SHPDA’s motion. Alacare subsequently withdrew as a party. After the parties had filed briefs in support of their respective positions, the circuit court held a hearing on the petitions of Gentiva and Amedisys, at which three arguments were articulated in favor of reversal of SHPDA’s decision: (a) that the CONRB violated SHPDA regulations by allowing Clennon and Butler to address the CONRB; (b) that the CON could not properly be issued to an entity that, the petitioners said, did not exist; and (c) that the decision by SHPDA to issue a CON was not supported by substantial evidence. After receiving draft judgments from counsel for the petitioners and for ACE, the circuit court entered a judgment mirroring the form submitted by the petitioners, ruling in favor of the petitioners on each of the three grounds asserted and reversing the decision of SHPDA. ACE and SHPDA separately and timely appeal *935 ed from the judgment, and the circuit court stayed its judgment pending the resolution of the consolidated appeals.
“This court reviews a [circuit] court’s judgment regarding the decision of an administrative agency ‘without any presumption of its correctness, since [that] court was in no better position to review [the agency’s] decision than’ this court. Under the Alabama Administrative Procedure Act (‘AAPA’), § 41-22-1 et seq., Ala.Code 1975, which governs judicial review of agency decisions,
“ ‘[e]xcept where judicial review is by trial de novo, the agency order shall be taken as prima facie just and reasonable and the court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact, except where otherwise authorized by statute. The court may affirm the agency action or remand the ease to the agency for taking additional testimony and evidence or for further proceedings. The court may reverse or modify the decision or grant other appropriate relief from the agency action, equitable or legal, including declaratory relief, if the court finds that the agency action is due to be set aside or modified under standards set forth in appeal or review statutes applicable to that agency or if substantial rights of the petitioner have been prejudiced because the agency action is any one or more of the following:
“‘(1) In violation of constitutional or statutory provisions;
“ ‘(2) In excess of the statutory authority of the agency;
“‘(3) In violation of any pertinent agency rule;
“‘(4) Made upon unlawful procedure;
“‘(5) Affected by other error of law;
“ ‘(6) Clearly- erroneous in view of the reliable, probative, and substantial evidence on the whole record; or
“‘(7) Unreasonable, arbitrary, or capricious, or characterized by an abuse of discretion or a clearly unwarranted exercise of discretion.’
“§ 41-22-20(k), AIa.Code 1975.... In reviewing the decision of a state administrative agency, ‘[t]he special competence of the agency lends great weight to its decision, and that decision must be affirmed, unless it is arbitrary and capricious or not made in compliance with applicable law.’ ‘The weight or importance assigned to any given piece of evidence presented in a CON application is left primarily to the [CONRB’s] discretion, in light of the [CONRB’s] recognized expertise in dealing with these specialized areas.’ Neither this court nor the [circuit] court may substitute its judgment for that of the administrative agency. ‘This holds true even in cases where the testimony is generalized, the evidence is meager, and reasonable minds might differ as to the correct result.’ Further, ‘an agency’s interpretation of its own rule or regulation must stand if it is reasonable, even though it may not appear as reasonable as some other interpretation.’ ”
Colonial Mgmt. Grp., L.P. v. State Health Planning & Dev. Agency, 853 So.2d 972, 974-75 (Ala.Civ.App.2002) (emphasis and some citations omitted). With those principles of review firmly in mind, we address the three bases of the circuit court’s reversal.

Clennon’s and Butler’s Remarks to the CONRB

SHPDA, pursuant to its statutory authority to “prescribe by rules and regu *936 lations the procedures for review of applications for certificates of need and for issuance of certificates of need,” see Ala.Code 1975, § 22-21-275, has adopted several pertinent regulations that address the procedures that govern administrative action on CON applications. First, Ala. Admin. Code (SHPDA), Rule 410-1-8-.01, provides that proceedings on a CON application may properly be heard by either the CONRB itself, if no request is made for an assignment of the matter to an ALJ, or by an ALJ if such a request is made.[3] If an ALJ is requested, is assigned, and' has issued proposed findings of fact and conclusions of law, four regulations adopted by SHPDA address the further procedure to be followed by the CONRB:
(1) Ala. Admin. Code (SHPDA), Rule 410-1-8-05(2), provides that “Exceptions to the [ALJ’s proposed] findings of fact and conclusions of law shall be filed ... within seven days after the findings of fact and conclusions of law are rendered,” after which “[t]he proposed findings of fact and conclusions of law ... and the record of the contested case hearing, and the exceptions to the proposed order, if any, shall be submitted to the” CONRB’s membership and the ALJ’s recommendations will thereafter be “either ratified or rejected, in whole or in part, by a majority vote of a quorum of [the] membership.”
(2) Ala. Admin. Code (SHPDA), Rule 410-1-8-.03, provides, among other things, that interested persons who have appeared are to be given the opportunity “to respond and present evidence and argument on all material relevant to the issues involved” but that, when an ALJ has held a contested-case hearing, the “form of presentations to the [CONRB] shall be exceptions filed with the SHPDA in accordance with Rule 410-1-8-.05 and at the discretion of the Chairperson [of the CONRB] by oral arguments.”
(3) Ala. Admin. Code (SHPDA), Rule 410-l-7-.17(l)(c), reiterates that, when an ALJ has held a contested-case hearing, the CONRB may consider oral arguments at the discretion of its chair, but it also provides that “written briefs [may be] filed with the agency no later than seven (7) days before the [CONRB] meeting at which the recommended findings of fact and conclusions of law submitted by the [ALJ] are to be considered.”
(4) Ala. Admin. Code (SHPDA), Rule 410-1-8-.04, which addresses public hearings of the CONRB, provides that “[a]ll oral presentation made at the public hearing shall be sworn to.”
As has been noted, a hearing concerning ACE’s CON application was held before an ALJ during which five witnesses, including Clennon and Butler, testified. After the ALJ had issued proposed findings of fact and conclusions of law and had recommended denial of ACE’s application, ACE filed written exceptions to the ALJ’s proposals, and both Clennon and Butler (along with ACE’s counsel) attended the CONRB meeting at which the matter of accepting or rejecting the ALJ’s proposals would be considered. During that meeting, the chair notified both ACE and the opponents of ACE’s application that they would be afforded 15 minutes for their principal oral presentations and 2½ minutes for any rebuttal. At that time, counsel for ACE stated that she had “a couple of people that are going to speak, if they *937 can get sworn in,” and the record reflects that oaths were then administered. After making brief remarks about the nature of the purported home-health-care need that ACE was seeking to All, counsel for ACE then stated that she would defer to Clen-non to further describe the proposed project. Counsel for Amedisys then objected, stating that, “under the rules of the [CONRB], further testimony from the witnesses is not permitted” and that presentations at the meeting could only take the form of “arguments of counsel”; the CONRB’s chair then described that position as “incorrect” and stated that the CONRB “can hear from anybody as long as they don’t say anything that wasn’t in” the record, and counsel for ACE indicated that the speakers for ACE were “going to speak with what’s on the record.” The chair then admonished Clennon to confine his remarks to matters “within the boundary” of “what was already said” before the ALJ, and Clennon’s oral presentation (and that of Butler) proceeded without any further objections after his agreement to stay within the administrative record.
The circuit court’s judgment faults the CONRB for having permitted Clennon and Butler to speak on behalf of ACE:
“The argument made by SHPDA and [ACE] that [Clennon and Butler] were simply engaged in ‘oral argument^’] which is permitted by SHPDA regulations, is not supported by the evidence. A review of the additional sworn testimony offered by [Clennon and Butler] shows that it bears no resemblance to ‘oral argument[,’] but instead consists of additional factual statements ... in an attempt to rebut the [ALJ]’s findings. For example, to rebut the [ALJ]’s finding that [the proposed] project would not receive any preference from [the] Veteran’s Administration [ (VA’) ] in referring veteran patients in need of home health care ... Clennon ... testified that [ACE] would receive ‘special preferences’ from the federal government as a ‘disabled veteran-owned company[,’] and specifically referenced a ‘letter from the VA’ establishing such preference that was not in evidence:
“ ‘Right here I have a letter from the VA that’s sent to us, telling us just that, that we have first-line contracts and preferences for some veterans that we will want to treat.’
“Moreover, in their briefs, both SHPDA and [ACE] repeatedly cite to the additional testimony offered by [Clennon and Butler] at the [CONRB] meeting as evidence supporting the [CONRB]’s decision to approve [the] CON application. These citations are completely inconsistent -with the argument that the witnesses were only engaged in ‘oral argu-mente.’]”
The circuit court’s view of the presentations of Clennon and Butler to the CONRB as amounting to “testimony” is contrary to the regulatory framework adopted by SHPDA and referenced by the chair of the CONRB at' the pertinent meeting. SHPDA is, pursuant to Ala. Code 1975, §§ 22-21-274 and 22-21-275, the sole administrative agency with power over review criteria and review procedures set forth in the health-planning article, and the members of the CONRB, in reviewing CON applications, act as the voice of SHPDA. It is clear from the remarks of the chair to ACE’s counsel and to Clennon that, although the CONRB does require the “swearing in” of all nonattorneys who seek to address it (presumably in light of that portion of Rule 410-1-8-.04 referring to “oral presentation[s]”), it views interested persons such as Clennon and Butler as being entitled to orally address its members as to matters properly within the scope of the administrative record previ *938 ously made before the ALJ. We thus derive no support from the mere “swearing in” of Clennon and Butler for the proposition that they were necessarily “witnesses” when they addressed the CONRB regarding whether to grant ACE’s CON application.
Neither is the circuit court’s conclusion that the CONRB erred because Clennon and Butler purportedly ventured outside the permissible scope of oral presentations to the CONRB supported by the record. The specific example of Clennon’s reference to the availability of “first-line contracts” and “preferences” for potential veteran patients of ACE mirrored the substance of testimony given by ACE’s owner and business manager, Peggy Poin-dexter, before the ALJ to the effect that ACE, “[a]s a disabled veteran company,” would have “priority” in obtaining government contracts and that “a company like [ACE] that is veteran owned” would “be guaranteed to get at least a minimum percentage” of Veterans Administration referrals. Although, at the CONRB meeting, Clennon referred to having a “letter” regarding the existence of such preferences, that letter was neither introduced into evidence at the contested case before the ALJ nor offered to the members of the CONRB. The remaining remarks of Clennon and Butler simply refer to ACE’s veteran-owned and -operated status, its intent to provide a low-cost service to people (especially armed-forces veterans) with inadequate health-care access, Clennon’s own administrative and health-care experiences, ACE’s notable military and political supporters, and Butler’s professional credentials and experience, all of which was in evidence at the ALJ hearing.
The CONRB, especially in the absence of any objection lodged at its meeting to any specific inappropriate statement made by Clennon and Butler, could properly have considered the remarks of those speakers in determining whether to reject the ALJ’s findings, conclusions, and ultimate recommendation regarding ACE’s CON application. Although ACE and SHPDA, in their submissions to the circuit court seeking a judgment affirming the CONRB’s decision, relied in part upon the remarks made by those speakers (as well as the remarks of members of the CONRB itself), their having done so in the zeal of advocacy for their clients does not transform the remarks before the CONRB into “evidence” any more than any other argument of counsel can properly be said to amount to “evidence” (cf. Fountain Fin., Inc. v. Hines, 788 So.2d 155, 159 (Ala.2000)). Because the circuit court did not accord the proper deference due the CONRB with respect to the latitude that body, in its discretion, chose to afford ACE in advocating acceptance of its CON application within the scope of the pertinent regulations, we cannot conclude that the circuit court’s judgment reversing SHPDA’s decision should be affirmed on that ground.

ACE as an Applying Entity

The circuit court, as a second basis for its judgment of reversal, stated that “ACE Home Health Care, LLC,” the applying entity listed on the amended CON application, was not a legal entity at the time of that application or at the time the hearing before the ALJ took place; thus, the circuit court opined, the CON application ran afoul of Ala.Code .1975, § 10A-5-2.05, which provides that a limited-liability company cannot transact business until it has filed a certificate of formation. However, the ALJ specifically found in favor of ACE on the issue of the propriety of its application under that corporate name, and none of the opponents of its CON application filed any exceptions to the ALJ’s determination in favor of ACE. Assuming, *939 without deciding, that the circuit court properly reached the issue in entering its judgment, we nonetheless conclude that that ground is likewise legally flawed.
The record reflects that a limited-liability company known as “ACE Home Health & Hospice Care, LLC” was formed by Clennon by filing a certificate of formation with the Madison County probate office in March 2012. It was only after SHPDA notified Clennon that that entity could not seek in a single application a CON for both hospice-care and home-health-care services that Clennon amended the CON application to list the applicant’s name as “ACE Home Health Care, LLC” and sought to change the official name of the applying business entity to “ACE Home Health Care, LLC” by filing an amended certificate of formation — at which time he was informed that a backlog at the Secretary of State’s office prevented the probate office from accepting that amended certificate for filing. Although the circuit court and the opponents of the CON are, as a purely technical matter, correct in their insistence that there was no business entity officially named “ACE Home Health Care, LLC” at the time the amended CON application was filed and the ALJ held the evidentiary hearing on that application, “ACE Home Health & Hospice Care, LLC” was an extant domestic business entity as of the date of the filing of its certificate of formation with the probate office, see Ala.Code 1975, § 10A-l-4.il, and had the authority to exercise “the same powers as an individual to take action necessary or convenient to carry out its business and affairs” under Ala.Code 1975, § 10A-l-2.il. Those powers necessarily included the power an individual has under our law to adopt a suitable trade name, different from one’s own name, by which it might transact business. See Manistee Mill Co. v. Hobdy, 165 Ala. 411, 416, 51 So. 871, 878 (1909).[4] We thus perceive no error of law in SHPDA’s placement of substance over form in this instance in its issuance of a CON to ACE.

Sufficiency of the Evidence

The final ground upon which the circuit court based its reversal of SHPDA’s decision is its conclusion that the CONRB could not properly have determined that ACE should receive a CON in light of evidence tending not to show that ACE’s “project is financially feasible,” that ACE “has the experience and expertise necessary to provide home health services safely and appropriately,” and that “there is a need for the project because the veteran population in Madison County is underserved.” We here reiterate that the circuit court “was in no better position to review [SHPDA’s] decision than this court,” that “[t]he weight or importance assigned to any given piece of evidence presented in a CON application is left primarily to the CONRB’s discretion, in light of the [CONRB’s] recognized expertise in dealing with these specialized areas,” that a reviewing court is not to “substitute its judgment for that of the administrative agency,” and that that principle applies “even in cases where the testimony is generalized, the evidence is meager, and reasonable minds might differ as to the correct result.” Colonial, 853 So.2d at 974, 975.
In its wisdom, the legislature has assigned to SHPDA and not the judiciary the task of determining whether to grant or deny CON applications, specifying in Ala.Code 1975, § 22-21-264, that SHPDA is to consider (1) the proposed service’s *940 “[(Consistency with the appropriate State Health Facility and services plans”; (2) “[t]he relationship of services reviewed to the long-range development plan (if any) of the person providing or proposing such services”; (3) “[t]he availability of alternative, less costly or more effective methods of providing such services”; (4) the existence “of a substantially unmet public requirement for the proposed health care ... service ... that is consistent with orderly planning within the state and the community for furnishing comprehensive health care,” including the project’s “[financial feasibility”; and (5) whether “the person applying is an appropriate applicant ... to render adequate services to the public.” Further, SHPDA has adopted regulations indicating its intent to consider other and further factors in determining whether a CON should be issued, including “community reaction to the facility,” and CON applicants are invited to “submit endorsements from community officials and individuals expressing their reaction to the proposal.” Ala. Admin. Code (SHPDA), Rule 410-l-6-.06(l)(f).
The record reflects that there is a profound need in Madison County, as indicated by the SHP, for additional home-healthcare services. A 2010 statistical update to the home-health section of the SHP reveals Madison County, a county that has not seen a new entrant in the home-healthcare market since 2004, to have a projection of only 103 patients served per 1,000 population and thereby qualifies as “under-served”; the update reveals an unmet need of 520 overall patients, well above the 100-patient threshold warranting approval of an additional home-health-care agency for a particular county. In the face of such a demonstrated unmet need, ACE’s evidence indicating that it planned to serve as many as 60 home-health-care patients in the long term, with a particular emphasis on serving armed-service veterans (a population that the CONRB termed “unique”), could properly have been viewed by the CONRB as indicating that ACE’s proposal was consistent with the SHP and would amount to an important step toward addressing a shortfall in care in the area, notwithstanding the existence of other evidence tending to show that the need reflected in the SHP could potentially be met by existing providers without an expressed veteran preference.
Further, the CONRB could properly have determined that ACE was an “appropriate applicant” notwithstanding the ALJ’s contrary conclusion.[5] To be sure, evidence was adduced at the administrative hearing tending to show that Clennon, a disabled veteran, is not himself qualified to provide health care and that he has no experience in negotiating the highly bureaucratized medical-payment system that prevails in this country. Because ACE is not an existing provider of home-healthcare services, however, the CONRB may well have opted to deem more persuasive other evidence in the record supporting the general competency of Clennon and the other principals of ACE to negotiate bureaucracies and to procure labor and materials necessary to operate a business directly serving the public. Clennon’s personal resume lists an educational background including two master’s level degrees in industrial operation and business *941 administration and a work background including a number of Army procurement assignments in locations such as Kuwait, Iraq, Qatar, and Afghanistan; Poindexter’s resume includes significant work experience in Army contract and project management; and Butler’s resume includes primarily work experience in the nursing and nursing-education fields, including work as a director of nursing.[6] Further, ACE submitted in support of its application a number of supporting letters; although some of those letters came from state legislators and municipal officials and were intended to show community attitudes supporting ACE’s plan, others were sent by Army officers who had known Clennon personally during his Army service and praised the quality of his work for the Army. Although the evidence as to the “appropriate applicant” issue might well have supported a determination in favor of ACE’s opponents, we must conclude that, in reaching a conclusion that ACE failed to demonstrate its worthiness as a CON applicant, the circuit court usurped the role of the CONRB to weigh the evidence presented and improperly substituted its judgment for that of the agency based upon that court’s own view of the evidence.
We reach a similar conclusion as to the circuit court’s conclusions regarding the “financial feasibility” of the project, a criterion derived from (but not otherwise further defined in) Ala.Code 1975, § 22-21-264(4)a. In that regard, we note that the judiciary is to give great weight to any reasonable construction of a regulatory statute, such as those appearing in the health-planning article, that has been adopted by SHPDA, the agency charged with the enforcement of those statutes. See QCC, Inc. v. Hall, 757 So.2d 1115, 1119 (Ala.2000). QCC also teaches that if the pertinent legislative body has enacted a regulatory statute that is silent or ambiguous as to a particular issue instead of expressing a particular legislative intent, all that is required to uphold an enforcing agency’s interpretation is a judicial determination whether that interpretation is permissible, e.g., when the agency’s reading fills in a gap left by the statutory language used. See id.
Here, despite the efforts of the opponents of ACE’s application to impugn the correctness of ACE’s projected earnings and expenditures expected during the start-up period of ACE’s home-health-care operations, the CONRB found persuasive on the issue of financial feasibility the commitment of ACE’s principals to support the project with their own personal financial resources. The transcript of the administrative hearing supports the materiality of that commitment; it reflects that Clennon’s considerable interests in real property and Butler’s and Poindexter’s significant personal wealth is such that if ACE suffers a budget shortfall, there would be “enough money to plug it in like any business” and that the principals of ACE could then “make a budget that is more representative of the environment.” Further, the proposed budget submitted by ACE as a component of its application indicated an initial $80,000 cash infusion from its investors. In sum, the CONRB could properly have determined that ACE had demonstrated that its plan to serve approximately 30 home-health-care patients in the first year of its operation and 60 such patients in subsequent years, with a primary focus on the veteran population of Madison County, was a sufficiently modest project to warrant affording more weight to the personal ability of ACE’s principals to keep the business afloat than *942 to any preexisting knowledge of or targeting of seemingly preferable patient populations in general (such as Medicare and Medicaid patients). We cannot agree with the decision of the circuit court in this instance to minimize the factors considered crucial by the CONRB and to substitute its own judgment.

Conclusion

Based upon the foregoing facts and authorities, the judgment of the Montgomery Circuit Court is reversed. The cause is remanded with instructions to that court to enter a judgment affirming the decision of SHPDA to grant the CON application submitted by ACE.
2121065 — REVERSED AND REMANDED WITH INSTRUCTIONS.
2121076 — REVERSED AND REMANDED WITH INSTRUCTIONS.
THOMPSON, P.J., and THOMAS, MOORE, and DONALDSON, JJ„ concur.

. At the time of the CONRB hearing in December 2012, American armed forces had been deployed in Iraq and Afghanistan for several years in connection with "Operation Enduring Freedom — Afghanistan” and "Operation Iraqi Freedom” (which was later renamed "Operation New Dawn”).

. Because ACE's CON application was submitted to SHPDA before May 8, 2012, the effective date of Act No. 2012-294, Ala. Acts 2012 — which, among other things, vested appellate jurisdiction in this court from final decisions of SHPDA regarding whether to issue CONs, the appeals were properly taken to the Montgomery Circuit Court pursuant to Ala.Code 1975, § 41-22-20, a portion of the Alabama Administrative Procedure Act.

. An additional set of administrative regulations, not here applicable, addresses procedures to be followed when a "fair hearing” before an ALJ is requested after the CONRB has acted on a CON application without having preassigned the matter to an ALJ for the issuance of recommended findings of fact and conclusions of law. See generally Ala. Admin. Code (SHPDA), Rule 410-1-8-.16 et seq.

. We note that the name "ACE Home Health Care, LLC" is compliant with Ala.Code 1975, § 10A-1-5.06, requiring the inclusion of the abbreviation "LLC” in the names of limited-liability companies doing business in Alabama.

. " ' "[T]he ALJ’s recommendation is not a binding order on the parties, and the SHPDA regulations do not require that the CONRB give any deference to an ALJ’s recommendation.” ' " Brookwood Health Servs., Inc. v. Baptist Health Sys., Inc., 936 So.2d 529, 536 (Ala.Civ.App.2005) (quoting Colonial, 853 So.2d at 976, quoting in turn Forest Manor, Inc. v. State Health Planning & Dev. Agency, 723 So.2d 75, 82 (Ala.Civ.App.1998) (Crawley, J., dissenting, joined by Thompson, J.)).

. The record further indicates that ACE has hired a physician to serve as a medical director and an experienced nurse to serve as a nursing director.